PROVIDENT LIFE & ACCIDENT INS. CO. *v.* PRIETO.

(*Jackson,* April Term, 1935.)

Opinion filed April 6, 1935.

Rehearing denied June 10, 1935.

126

See, also (Tenn. Sup.), 76 S. W. (2d), 314.

Fitzhugh, Murrah & Fitzhugh, of Memphis, for plaintiff in error.

PIERCE & FRY and W. M. MILES, all of Union City, for defendant in error.

MR. SPECIAL JUSTICE EDWARD J. SMITH delivered the opinion of the Court.

As beneficiary of a policy of accident insurance issued by the Southern Surety Company to her husband, J. A. Prieto, liability of which was assumed by the Provident Life & Accident Insurance Company, Clara M. Prieto, individually, and as executrix of the estate of her deceased husband, instituted this action at law against the latter company to recover the sum of $10,000, the face value of the policy, on the ground that while the policy was in force, J. A. Prieto died as the result of an accidental discharge of a pistol.

The defendant interposed two pleas of the general issue: (1) That it did not owe the plaintiff, as in her declaration alleged; and (2) that it did not undertake and agree as plaintiff alleged in her declaration.

The plaintiff obtained a judgment in the circuit court from which the defendant prayed an appeal in the nature of a writ of error to the Court of Appeals, and there assigned twenty-three errors.

Overruling the defendant's assignments, to the effect that the trial judge erred in denying its motion for a directed verdict, and in refusing to grant a new trial, that court sustained certain other assignments of the defendant, based on alleged errors in the charge and the failure of the trial judge to charge certain special requests of the defendant. The judgment accordingly was reversed, and the case remanded for a new trial.

Petitions for the writ of *certiorari,* prayed by both parties, were granted, and have been argued at the bar.

For convenience, the parties hereafter will be styled as they were in the trial court; that is, as plaintiff and defendant.

As the defendant's petition is based on alleged errors of the Court of Appeals in not sustaining its assignments that the trial judge erred in denying its motion for a directed verdict, and in overruling its motion for a new trial, its petition will be considered first, as these assignments require a statement of the salient facts.

Prieto, who at the date of his death was about fifty-nine years of age, for many years had been one of the most prominent citizens of Union City. Twice elected mayor, he was serving in that capacity at the date of his death on September 16, 1932. He also was the secretary and active manager of the Union City Savings Building & Loan Association, and was local agent for several fire insurance companies.

That he was held in high honor and esteem by his fellow citizens is evidenced by the fact that many character witnesses, including prominent preachers, professional and business men, testified at the trial.

He was a very active man, working, as a rule, from 7 o'clock in the morning until 6 o'clock at night. The evidence shows that he was of a bright, sunny, and genial disposition, that his family relations were all that could be desired, and that he was not involved in any serious financial difficulties. Whatever cares and anxieties, if any he had, he kept strictly to himself.

In the spring of 1932, his family physician advised that, due to a malady of the heart, he should take a rest. His blood pressure was above normal. He had suffered

from a hernia since 1913, but this did not seem to impair his general health. In the early summer of 1932, he and his wife went to Mobile for ten days. The revelation that he had a heart ailment did not, according to his physician, depress him or cause him, in the least, to lessen his activities in the discharge of his public and private affairs.

Early in the summer of 1932, Mrs. Prieto received a letter from a friend in Tampa, Florida, stating that after the death of a brother of her husband, complications had developed in settling his estate. She communicated this fact to her husband, and asked him if he had made a will, stating that as they were childless, if he died intestate, his relatives might give her similar trouble. He replied that he had not made a will, but would do so, and accordingly on June 10, 1932, he executed a holographic will by which he gave all of his property to his wife, and provided that whatever remained at her death should go to Joseph Anderson Ward, a boy about thirteen years of age, whose mother had lived at the Prieto home since 1915, and who was treated by Mr. and Mrs. Prieto as if he had been their own son. The fact of the execution of the will is adverted to merely for the purpose of showing that it cannot fairly be considered as having been executed in contemplation of an early death, either from his physical ailment, or intentional self-destruction.

He had approximately $40,000 of other insurance, life and accident, in force at the date of his death. One $5,000 double indemnity policy had lapsed shortly before his death, and to secure its reinstatement, he had forwarded to the home office of the company a check in payment of the premium, but the company had not

passed on the application for reinstatement at the date of his death.

About sixty days before his death, Prieto, in his office at the Building & Loan Association, introduced Brush, sheriff of Obion county, to a traveling salesman, whose name Brush could not recall, but who was described by him as being thick-haired, stoutly built, and weighing about 150 pounds. Brush testified that in his presence Prieto and the traveling salesman discussed the question of the latter's exchanging a 32 Smith & Wesson pistol for Prieto's 25 Colt's automatic pistol, and that it was agreed that when the traveling salesman again came through Union City the matter would be further discussed and considered.

About the same period of time prior to his death, while at home for dinner, he asked Mrs. Edna Ward to remind him to take his pistol when he returned to his office. After dinner, he went to a bureau drawer, got the pistol, and carried it to his office. He told Mrs. Ward that he intended to trade it with a gentleman.

About three weeks prior to his death, he told Mrs. Ruby Oliver, who was employed in the office in which he conducted his fire insurance agency, that he expected to trade pistols with another gentleman.

On September 16, 1932, about 1:30 o'clock, he met Brush in the corridor of the courthouse, and asked him what he intended to do late that afternoon. Brush replied that he had to go to Arkansas to return a prisoner, and expected to be back about 5:30 o'clock. Prieto stated that he wanted Brush to clean his little pistol, as he expected to meet a man about 6 o'clock for the purpose of trading guns.

About 3 o'clock, he discussed with Guill, commissioner

of finance of Union City, certain official matters which would come up for consideration the following Tuesday. He appeared to be in his usual genial frame of mind, and Guill saw nothing out of the ordinary in his demeanor.

About 5 o'clock, in company with some friends, he had a drink of Coca Cola, and playing a game called "baffle board" at the Ford automobile agency. These witnesses testified that he was in good spirits, and even in a jovial mood.

At seven minutes to 6 o'clock, a time definitely fixed by Mrs. Brush because, as she stated, she looked at the clock to tune in on a radio program to which she wished to listen, Prieto called the Brush home, and asked if Brush had returned. Mrs. Brush replied that he had not, but that she would have him call Prieto as soon as he came in, to which he answered, not to bother her husband as "he could do it himself."

About 6 o'clock, the fair inference being after he had called the Brush home, he went across the street to a garage conducted by Alexander, and requested the latter to cut a piece of 14 wire about eight inches long, and to put a little loop at the end of it.

After he got the wire, and had returned to his office, he stepped next door, and asked a negro, named Robinson Hill, commonly called "Hi," to get a package of chewing gum, and when Hill returned with it, Prieto met him at the door of his office, thanked him for doing the errand, and at the time, according to Hill, had a can of oil and a towel in his hand. He stated to Hill that he was waiting to see a man, and did not want to miss him.

Shortly after Hill had returned to the automobile serv-

ice station, and was engaged in washing an automobile, a shot was heard, and soon a large crowd gathered. Ragsdale, who was the first to enter the office, found Prieto, lying on the floor, at a point about sixteen or seventeen feet from his desk.

Dr. Kimsey, who arrived shortly after Prieto's death, testified that death was caused by a bullet which entered about a quarter of an inch to the right of the left nipple, and about two inches above it, piercing the aorta, and coming out under the left shoulder at an elevation of one-half to three-quarters of an inch. This witness further testified that a 25 Colt's automatic pistol, pointing north, was lying on Prieto's desk, a position he would have been facing when seated at his desk, and that he also found on the desk a piece of wire with a loop at the end, a small can of oil, a towel which appeared to have grease or oil on it, and a piece of cotton, which was not stained by grease or oil, lying on the floor, which he picked up and placed on the desk.

Another witness, Beadles, testified as to the soiled condition of the towel found on the desk, and also that the shell of a bullet of the exact caliber of a 25 Colt's automatic was found six or seven feet to the west of Prieto's desk chair, where naturally it would have been found if the pistol, when fired, was pointed toward the deceased.

Dr. Latimer, who had been the family physician for some years, agreed in general with the testimony of Dr. Kimsey, and stated that the bullet probably passed through the heart, or very close to it.

Both of the physicians testified that smoke stains were found on the deceased's shirt, but neither admitted that they found any powder burns.

Prieto's vest was open, but no unusual significance can be attributed to this circumstance, as the proof shows that it was his habit to go about with his vest unbuttoned and open.

The proof is uncontradicted that the bullet pierced the aorta, as there was a great deal of blood found on the seat and back of the desk chair. Several witnesses testified that there was an irregular trail of blood from the chair to a point about seventeen or eighteen feet distant where Prieto was found by Ragsdale.

The natural inference is that he died very shortly after receiving the wound, and it definitely appears that he was lying on the floor, gasping and panting for breath, when Ragsdale reached him. He did not tell Ragsdale, or anyone else, as to how he had received his injury.

The magazine was in place; one shot had been fired; and, as stated above, the empty shell, found six or seven feet from his chair, as well as the bullet, afterwards recovered, admittedly were fired from a 25 Colt's automatic pistol.

Mrs. Prieto reached her husband's office a relatively short time after the shot had been fired. On cross-examination, she was asked if when she arrived and went into the room where her husband was lying on the floor, she did not exclaim: "Oh, Joe, why did you do it," and further, if she did not ask Mr. Beck, the president of the Building & Loan Association, to help her ascertain if her husband had left a note. She answered both questions by stating that she was so shocked at the time that she could neither admit nor deny that she made either or both of them. The defendant called no witness to contradict Mrs. Prieto on this point.

The foregoing constitutes a fair summary of the ante-

cedent facts, as well as of those put in evidence, by the plaintiff, as to the physical conditions and circumstances attending the insured's death.

The defendant introduced Colonel R. D. Jones of Springfield, Massachusetts, and Mr. John R. Higgins of Chattanooga, Tennessee, as expert witnesses on the mechanism of a 25 Colt's automatic pistol. A printed circular, showing a picture of such a pistol, and explaining its three safety devices, was exhibited.

The pistol, also put in evidence, was described by the two expert witnesses as being the last word in pistol construction, and as representing the result of the best scientific thought in seeking to reduce to a minimum the danger of an accidental discharge. All three of the safety devices were in good working order and condition.

These witnesses testified that if it was desired to clean the pistol thoroughly, the magazine should be removed, that the barrel, which was on a slide, should be pulled back until it was caught in a little niche, and then the whole barrel could be cleaned without the possibility of an accidental discharge.

They testified that anyone, having an expert knowledge of pistols, would have cleaned it in this manner. If there was a bullet in the barrel, the barrel would have to be pulled back on the slide so that the bullet would be ejected from a slot on the right side of the barrel, and the magazine removed, as otherwise a new cartridge automatically would be fed into the barrel. The first safety device consisted of a small steel button, which worked into an insert, in the barrel, and when in place, it was impossible to fire the gun. If the button was pulled down from the insert, the pistol could not be fired, even if the magazine was in place, unless simultaneous

pressure was exerted on the trigger and the safety device at the rear of the handle.

Prieto had owned the pistol for several years. According to the expert witnesses, the barrel did not work easily in the slide, and the safety device at the back of the handle required considerable pressure to press it forward. The spring was strong, and the pistol had the appearance of being almost new.

Both of the witnesses, who unquestionably were experts of high character, testified that accidents might happen with such a pistol, as did Brush, who was called as a rebuttal witness by the plaintiff.

Brush, however, agreed with Colonel Jones and Mr. Higgins that if the button was pulled down, and there was a bullet in the barrel, and the magazine not removed, the pistol could be fired only by simultaneous pressure being put on the trigger and the safety device at the back of the handle.

As there was no direct proof, only circumstantial evidence could be relied on to support the respective theories of the plaintiff and defendant as to the cause of the death of the insured. Murder being negatived, death was caused either by the accidental discharge of the pistol or by a wound intentionally self-inflicted.

The plaintiff contends that the pistol reasonably could have been discharged if Prieto, holding it in either hand, used the other in attempting to pull back the barrel so that the bullet would be ejected before he began to clean it, and that while so engaged his finger, or thumb, reasonably could have slipped from the trigger guard, and the pressure on the safety device at the rear of the handle caused the pistol accidentally to fire.

The defendant insists that the only reasonable in-

ference that can be drawn from the evidence is that Prieto committed suicide, and on this assumption, at the close of all of the evidence, it moved the court to direct a verdict in its favor, which was denied. As stated above, the Court of Appeals held that this ruling of the trial judge was not error.

Viewing the evidence in the light most favorable to the plaintiff, did the trial judge err in holding that an inference, supporting plaintiff's contention of accidental death, reasonably could be drawn from the evidence?

Excerpts from many cases, claimed to present analogous factual conditions, are quoted in the briefs, but they require no notice, as every case must be decided on its own peculiar facts and circumstances; no two are alike.

It is settled that a trial judge has no power to direct a verdict in any case where there is a dispute as to any material evidence, or any reasonable doubt as to the conclusion to be drawn from all of the evidence. *Kinney* v. *R. R. Co.*, 116 Tenn., 450, 92 S. W., 1116; *Norman* v. *R. Co.*, 119 Tenn., 401, 104 S. W., 1088; *Tennessee Central R. R. Co.* v. *Morgan*, 132 Tenn., 1, 175 S. W., 1148; *Hines* v. *Partridge*, 144 Tenn., 219, 232, 231 S. W., 16. In *Patton* v. *Railway Co.*, 179 U. S., 658, 660, 21 S. Ct., 275, 276, 45 L. Ed., 361, in stating its practice in reviewing the action of a trial court, either in granting or denying a motion for a directed verdict, the court said:

"And if such judgment is approved by the proper appellate court, this court, when called upon to review the proceedings of both courts, will rightfully be much influenced by their concurrent opinions."

In *Supreme Lodge, Knights of Pythias* v. *Beck*, 181

U. S., 49, 52, 21 S. Ct., 532, 45 L. Ed., 741, the above excerpt was quoted with approval and followed.

In *Mutual Life Ins. Co. of New York* v. *Gregg* (C. C. A.), 32 F. (2d), 567, 568, in stating the rule to be applied by an appellate court in passing on the question as to whether death was accidental or intentionally self-inflicted, the court said:

"The question for the reviewing court must be just the same as in any other kind of a law suit tried by a jury. Does the evidence, taken in the most favorable light for plaintiff, compel all reasonable men to accept the theory of suicide? If so, a verdict will be directed for defendant; otherwise not; and in this inquiry, as in every other case where the jury may rightfully refuse to accept that theory which is the natural and *prima facie* correct inference from all the facts, there must be some other theory fairly reconcilable with the admitted facts, and which is reasonably possible rather than merely fantastic."

After a careful consideration of the evidence, the court is of the opinion that the Court of Appeals did not err in overruling defendant's assignments that the trial judge erred in not directing a verdict in its favor, and in refusing to grant a new trial on the ground that there was no material, credible evidence to support the verdict of the jury.

On this branch of the case, the judgment of the Court of Appeals is affirmed.

That court, however, sustained defendant's assignments 4, 5, 6, 7, 8, 9, 10, 12, 15, 16, 19, and 20 based on alleged errors in the charge, and the failure to charge certain special requests tendered by the defendant.

Considering that the above-numbered assignments

138

were but restatements in varying forms of assignment 4, the court specifically dealt only with that assignment.

■ As the part of the charge held to be erroneous must be considered with its context, it is necessary to summarize the relevant parts of the charge.

After stating the issues involved, the court charged: (1) That before the plaintiff could recover, she must prove, by a preponderance of the evidence, all the facts and circumstances necessary to make out her case substantially as alleged in the declaration. (2)· That two defenses had been interposed, (a) that the injury which the deceased sustained was caused by his own voluntary act, and (b) that if his death was not so caused, he should reasonably have foreseen or anticipated that death would result from the way and manner in which he handled the pistol. (3) Was the injury effected through accidental means, or did Prieto commit suicide? If the jury believed, from the evidence, that the deceased did commit suicide, its verdict must be for the defendant. (4) That there was a presumption that the insured did not commit suicide, and that this presumption should be considered in deciding whether or not he did so. (5) That the defense of suicide was an affirmative one, and the burden was upon the defendant to establish the same by a preponderance of the evidence. (6) That .the plaintiff was entitled to recover unless the evidence introduced overcame this presumption and satisfied the jury that death was voluntary. (7) That the presumption against suicide was a disputable one, and if, from the evidence, the jury found by a preponderance thereof that the insured came to his death by voluntarily and intentionally shooting himself, or if, without such intention, he handled the pistol in such a way that he rea-

sonably should have anticipated and foreseen that death would result, the verdict must be for the defendant. And (8) if the jury found there was no preponderance of the evidence as to the cause of death, the presumption was that it occurred by accident.

In addition to the general charge, the trial judge charged defendant's special request 4, as follows:

"The court charges you that the presumption against suicide referred to in the charge does not relieve the plaintiff of the burden of proving, by a preponderance of the evidence, that the death of J. A. Prieto was brought about solely through accidental means."

The portion of the charge held to be erroneous is as follows:

"The Court, further instructs the jury that a man's natural instinct is to preserve his life and not to destroy it. Therefore, the presumption is that the insured did not commit suicide, and this presumption should be considered in deciding whether or not he did commit suicide.

"The Court further instructs the jury that one of the defenses in the case is that the insured did commit suicide. And you are instructed that this is an affirmative defense set up by the defendant, and the burden is upon the defendant to establish same by the preponderance of the evidence.

"The plaintiff is therefore entitled to recover unless the evidence introduced has overcome this presumption and satisfied you that death was voluntary. But this is only a disputable presumption, and if from the evidence in the case you find by a preponderance thereof that the insured came to his death by voluntarily and intentionally shooting himself, you must find for the

defendant. The court further instructs the jury that when a man suffers injury which might have been caused by accident, or might have been intentionally inflicted upon himself, and there is no preponderance of evidence as to the cause of such injury, the presumption is that death occurred by accident."

It was held by the court below that in so charging the jury, the trial judge erred (1) in charging on the issue as to whether the insured accidentally shot himself or committed suicide, the presumption against suicide should be considered in deciding whether or not he did commit suicide; (2) that the defense of suicide was an affirmative one because the defendant, under its pleas of the general issue, had not pleaded such a defense; (3) that the burden was on the defendant to *establish,* by a preponderance of the evidence the defense of suicide; (4) that the plaintiff was entitled to recover unless the evidence introduced overcame the presumption against suicide, and satisfied the jury that death was voluntary; and (5) if there was no preponderance of the evidence as to the cause of death, the presumption was that it occurred by accident.

The policy in question insured "against loss or disability resulting solely from bodily injury and effected solely through accidental means."

By a subsequent independent clause it was provided, among other things, that "the insurance under this policy shall not cover suicide, sane or insane, or any attempt thereat, sane or insane."

In an action on a policy of accident insurance, or on a double indemnity clause of a policy of life insurance, containing an independent clause excluding suicide, the affirmative of the issue rests on the plaintiff

from the beginning to the end of the trial, and it is the duty of the plaintiff to carry the burden of proof in its primary sense, and to establish, by a preponderance of all the evidence, that death resulted from a cause liability for which was assumed by the policy. If the facts and circumstances attending death leave it reasonably doubtful as to whether it was caused by accidental means or by suicide, the presumption against suicide comes to the aid of the plaintiff, and casts on the defendant the duty of going forward with the proof and establishing the defense of suicide by a fair preponderance of the evidence.

The first proposition requires no comment. Counsel for defendant, however, vigorously assail the second, and deny that it is a correct statement of the law.

In discussing the relevant authorities, the decisions of this court, or of intermediate courts approved by it, will be first considered, followed by a discussion of the authorities on which these decisions are based, and finally by a consideration of other authorities from federal and state courts, which, it is conceived, announced correct principles of law.

*Insurance Co.* v. *Bennett* (1891), 90 Tenn., 256, 262, 16 S. W., 723, 724, 25 Am. St. Rep., 685, was an action on a policy of accident insurance, in which it appeared that the insured, Bennett, was found dead with a pistol shot through his heart.

The plaintiff recovered a judgment, from which the insurer appealed, and assigned as error the action of the trial judge in charging on the presumption against suicide. In overruling this assignment, the court, speaking through Mr. Justice SNODGRASS, said:

"The first of this assignment is that the court er-

roneously charged: 'The presumption of the law is that Bennett did not commit suicide, and was not murdered.' The court did so charge, adding, however, that 'either of these presumptions may be overcome by facts and circumstances which establish the contrary;' and elsewhere saying to the jury: 'In determining what facts are proven in the case, you should carefully consider all the evidence given, with all the circumstances of the subject-matter of the inquiry, as detailed by the witnesses.'

"The charge was a correct statement of the law. *Mallory* v. *Ins. Co.*, 47 N. Y., 52 [7 Am. Rep., 410]; *Insurance Co.* v. *McConkey*, 127 U. S., 661, 8 S. Ct., 1360 [32 L. Ed., 308].''

The opinion does not show whether the defense of suicide was pleaded specially or under the general issue.

*Fisher* v. *Insurance Co.* (1911), 124 Tenn., 450, 508, 138 S. W., 316, 330, Ann. Cas., 1912D, 1246, was a suit in equity on a policy of accident insurance in which the complainant recovered, and on appeal the insurer assigned as error the action of the chancellor in charging the jury:

"The court further charges you that the complainant is entitled to a presumption that his wife did not commit suicide, and that his wife was not murdered by him or anyone else. Each of these presumptions may be overcome by facts and circumstances which establish the contrary; but the court instructs you that they stand until they are overcome by the preponderance of the evidence, sufficient for that purpose."

Seemingly the substance of the above-quoted excerpt from the charge was not objected to, as the opinion states: "The special objection raised to this portion

of the charge is based upon the use of the word 'establish,' which was defined in *Knights of Pythias* v. *Steele*, 107 Tenn., 1, 7, 11, 63 S. W., 1126, 1128,'' etc.

The opinion fails to show whether suicide was affirmatively pleaded in the answer, or the allegation of the bill, that the death of the insured was caused solely by external, violent and accidental means, merely was denied by the answer.

*Brown* v. *Sun Life Insurance Co.* (Tenn. Ch. App., 1899), 57 S. W., 415, 416, 51 L. R. A., 252, orally affirmed by this court on January 11, 1900, was a suit in equity on a policy of life insurance which contained a clause excluding death by suicide. It appeared that the insured had taken an excessive dose of morphine, as the result of which he died. From a decree in favor of the beneficiary, the insurer appealed and contended that the taking of such a large overdose of morphine by the insured established suicide and not accidental death. The court, speaking through WILSON, J., said:

"The principle or rule, in cases of this character, is equally supported that suicide or intentional destruction by one's own hand is not presumed. The presumption is otherwise. The company interposing the defense of suicide, whether sane or insane, must overcome this presumption, and satisfy the jury or court trying the case, by a preponderance of evidence, that the self-destruction was intentional. *Walcott* v. *Insurance Co.*, *supra* [64 Vt., 221, 24 A., 992, 33 Am. St. Rep., 923]; *Mallory* v. *Insurance Co.*, 47 N. Y., 52, 7 Am. Rep., 410; *Cronkhite* v. *Insurance Co.*, 75 Wis., 116, 43 N. W., 731, 17 Am. St. Rep., 184; *Freeman* v. *Insurance Co.*, 144 Mass., 572, 12 N. E., 372; *Insurance Co.* v. *McConkey*, 127 U. S., 661, 8 S. Ct., 1360, 32 L. Ed., 308; *Streeter* v.

*Insurance Co.* [65 Mich., 199], 31 N. W., 779, 8 Am. [St.] Rep., 882; *Persons* v. *State,* 90 Tenn., 291, 295, 16 S. W., 726; *Insurance Co.* v. *Bennett,* 90 Tenn., 256, 16 S. W., 723 [25 Am. St. Rep., 685]."

The court further said:

"Under the evidence, and the fair inferences therefrom, the question of whether he purposely took an overdose of the drug, or innocently, ignorantly, or accidentally did so, is about evenly balanced. In this state of the case, the presumption of the law turns the scale in favor of the liability of the company under its policy."

*Metropolitan Life Insurance Co.* v. *Staples* (1927), 5 Tenn. App., 436, 441, was an action on a policy of life insurance in which suicide was relied on as a defense. The plaintiff recovered a judgment. Overruling the insurer's assignment that the trial court erred in charging the presumption against suicide, the court said:

"There is no presumption in favor of voluntary self-destruction when one is found slain. On the contrary, out of deference to the well known fact that almost universally people love and will defend their lives vigorously, even desperately, rather than destroy it, there is a presumption against self-slaughter. *Insurance Co.* v. *Bennett,* 90 Tenn., 256 [16 S. W., 723, 25 Am. St. Rep., 685]; *Persons* v. *State,* 90 Tenn. [291], 295 [16 S. W., 726]; *Fisher* v. *Insurance Co.,* 124 Tenn. [450], 508 [138 S. W., 316, Ann. Cas., 1912D, 1246]; *Railroad Co.* v. *Herb,* 134 Tenn. [397], 401 [183 S. W., 1011]; *Brown* v. *Sun Life Insurance Co.* [(Tenn. Ch. App.), 57 S. W., 415], 51 L. R. A., 252.

"Nevertheless it is likewise known that people do sometimes destroy their own lives, therefore that one's life was not self-destroyed is a rebuttable presumption.

"With the proof before the court as presented by this record, and aided by such presumption, which itself is legal proof, we think there was not only evidence to sustain the verdict, but we do not really see how the jury could have found otherwise. The evidence was circumstantial that was relied upon to overcome this presumption. It was therefore essential that the circumstances should not only maintain and support the theory of death by his own voluntary act with equal probability, but, further than this, it was requisite that they should be so strong as to exclude with reasonable certainty any hypothesis of death by accident or act of another. *Tabor v. Mutual Life Ins. Co. of N. Y.* [13 F. (2d), 765, 770 (C. C. A., 4)]. This is a recent case, but it cites a number of cases from different states and from the Supreme Court of the United States as sustaining the doctrine, which, indeed, is but a declaration of a fundamental principle of the law of circumstantial evidence. The burden is on the defendant to establish defense of suicide, or intentional self-destruction, even of an insane person, to escape liability.

"In the recent case of the *Equitable Assur. Soc. of U. S.* v. *Stinnett* [13 F. (2d), 820 (C. C. A., 6)], it was held that 'In action on life policy burden is on defendant to establish defense of suicide, and court should not direct verdict for defendant on that issue unless facts and circumstances proved are such as to permit of no other reasonable inference.' "

*Life & Casualty Insurance Co.* v. *Robertson* (1927), 6 Tenn. App., 43, 68, was an action at law on a policy of life insurance in which suicide was pleaded as a defense. Error was assigned on the charge of the trial judge in instructing the jury that the burden rested on

the insurer to establish the defense of suicide by a preponderance of the evidence, and to the exclusion of every other reasonable hypothesis. It was held that the trial judge did not err in so charging, and *Insurance Co.* v. *Bennett,* 90 Tenn., 256, 16 S. W., 723, 25 Am. St. Rep., 685, was cited as one of the authorities relied on by the Court of Appeals in reaching this conclusion.

Coming now to a consideration of the authorities on which the cases above cited were based, it will be noted that, with the exception of *Fisher* v. *Insurance Company, supra,* in which no authorities were cited, *Travelers' Insurance Co.* v. *McConkey* (1888), 127 U. S., 661, 8 S. Ct., 1360, 1362, 32 L. Ed., 308, was the principal authority relied on by Mr. Justice SNODGRASS in *Insurance Co.* v. *Bennett, supra,* and that, in turn, the McConkey Case and the Bennett Case are cited and followed in *Brown* v. *Sun Life Insurance Co.; Metropolitan Insurance Co.* v. *Staples; Life & Casualty Co.* v. *Robertson, supra.* It may be added that since it was decided nearly fifty years ago, *Travelers' Insurance Co.* v. *McConkey,* has been generally regarded as the leading authority in cases of this character.

*Travelers' Insurance Co.* v. *McConkey, supra,* was an action on an accident policy. The proof showed that the insured died as a result of a pistol shot through his heart. The trial judge charged the jury that the burden of proof was upon the plaintiff to establish by a preponderance of creditable testimony that the deceased came to his death from injuries effected through external, violent, and accidental means within the intent and meaning of the contract and conditions expressed in the policy; but as death manifestly was caused by external and violent means, the defense alleged in the answer of the

insurer, that it was caused by suicide, placed on the insurer the duty of overcoming the presumption against suicide by a preponderance of the evidence; that this presumed fact was not conclusive, but might be overcome by evidence that the injuries were voluntary or intentional; and that the presumption that it was accidental and not intentional on the part of the insured, which facts, proved and presumed, made out the plaintiff's case unless the defendant satisfied the jury by affirmative proof that the means of death were intentional on the part of the insured.

In holding that the trial judge did not err in so charging, the court, speaking through Mr. Justice HARLAN, said:

"Were the means by which the insured came to this death also accidental? If he committed suicide, then the law was for the company, because the policy, by its terms, did not extend to or cover self-destruction, whether the insured was at the time sane or insane. In respect to the issue as to suicide, the court instructed the jury that self-destruction was not to be presumed. In *Mallory* v. *Travelers' Insurance Company,* 47 N. Y. [52], 54 [7 Am. Rep., 410], which was a suit upon an accident policy, it appeared that the death was caused either by accidental injury or by the suicidal act of the deceased. 'But,' the court properly said, 'the presumption is against the latter. It is contrary to the general conduct of mankind; it shows gross moral turpitude in a sane person.' Did the court err in saying to the jury that, upon the issue as to suicide, the law was for the plaintiff, unless that presumption was overcome by competent evidence? This question must be answered in the negative."

The law in cases of this character was settled definitely so far as the federal courts are concerned by the decision in the McConkey Case. *Home Ben. Ass'n* v. *Sargent,* 142 U. S., 691, 12 S. Ct., 332, 35 L. Ed., 1160; *Connecticut Mutual Life Insurance Co.* v. *Akens,* 150 U. S., 468, 14 S. Ct., 155, 37 L. Ed., 1148; *Supreme Lodge, Knights of Pythias* v. *Beck,* 181 U. S., 49, 21 S. Ct., 532, 45 L. Ed., 741; *Messervey* v. *Standard Accident Insurance Co.,* 58 F. (2d), 186, 187 (C. C. A., 2); *Parrish* v. *Order U. C. T.,* 232 F., 425, 427 (C. C. A., 4); *Tabor* v. *Mutual Life Insurance Co.,* 13 F. (2d), 765, 770 (C. C. A., 4); *Union Mutual Life Insurance Co.* v. *Payne,* 105 F., 172 (C. C. A., 5); *National Union* v. *Fitzpatrick,* 133 F., 694, 697 (C. C. A., 5); *Metropolitan Insurance Co.* v. *Williamson,* 174 F., 116 (C. C. A., 5); *New York Life Insurance Co.* v. *Bradshaw,* 2 F. (2d), 457 (C. C. A., 5); *New York Life Insurance Co.* v. *Weaver,* 8 F. (2d), 680 (C. C. A., 5); *Planters' Bank* v. *New York Life Insurance Co.,* 11 F. (2d), 602 (C. C. A., 5); *Davis* v. *Reliance Life Insurance Co.,* 12 F. (2d), 248 (C. C. A., 5); *Scharlach* v. *Pacific Mutual Life Insurance Co.,* 16 F. (2d), 245 (C. C. A., 5); *New York Life Insurance Co.* v. *Brown,* 39 F. (2d), 376, 377, 378 (C. C. A., 5); *Burkett* v. *New York Life Insurance Co.,* 56 F. (2d), 105, 107 (C. C. A., 5); *Love* v. *New York Life Insurance Co.,* 64 F. (2d), 829, 833 (C. C. A., 5); *Standard Life & Accident Insurance Co.* v. *Thornton,* 100 F., 582, 49 L. R. A., 116 (C. C. A., 6); *Equitable Life Assur. Soc. Co.* v. *Stinnett,* 13 F. (2d), 820 (C. C. A., 6); *International Life Insurance Co.* v. *Carroll et al.,* 17 F. (2d), 42, 43, 15 A. L. R., 362 C. C. A., 6); New *York Life Insurance Co.* v. *Ross,* 30 F. (2d), 80, 83 (C. C. A., 6); *Missouri State Life Insurance Co.* v. *Pater,* 15 F. (2d), 737 (C. C. A., 7); *New York*

*Life Insurance Co.* v. *Pater,* 17 F. (2d), 963 (C. C. A., 7); *Ocean Accident & Guarantee Corp.* v. *Schachner,* 70 F. (2d), 28, 31 (C. C. A., 7); *New York Life Insurance Co.* v. *Melgard,* 74 F. (2d), 489, 491 (C. C. A, 7); *Fidelity & Casualty Co.* v. *Egbert,* 84 F., 410 (C. C. A., 8); *Travelers' Insurance Co.* v. *Allen,* 237 F., 78 (C. C. A., 8); *Von Crone* v. *Travelers' Insurance Co.,* 11 F. (2d), 350 (C. C. A., 8); *Pacific Mutual Life Insurance Co.* v. *Brooks,* 14 F. (2d), 307 (C. C. A., 8); *Mutual Life Insurance Co.* v. *Hatten,* 17 F. (2d), 889, 890 (C. C. A., 8); *Lincoln National Life Insurance Co.* v. *Erickson,* 42 F. (2d), 997, 1000 (C. C. A., 8); *New York Life Insurance Co.* v. *Anderson,* 66 F. (2d), 705 (C. C. A., 8); *Tschudi* v. *Metropolitan Life Insurance Co.,* 72 F. (2d), 306, 308 (C. C. A., 8); *Connecticut Mutual Life Insurance Co.* v. *McWhirter,* 73 F., 444 (C. C. A., 9); *United States Fidelity & Guaranty Co.* v. *Blum,* 270 F., 946 (C. C. A., 9); *Metropolitan Life Insurance Co.* v. *Broyer,* 20 F. (2d), 818, 820 (C. C. A., 9); *Connecticut General Life Insurance Co.* v. *Maher,* 70 F. (2d), 441 (C. C. A., 9); *Frankel* v. *New York Life Insurance Co.,* 51 F. (2d), 933, 935 (C. C. A., 10); *Wirthlin* v. *Mutual Life Insurance Co.,* 56 F. (2d), 137, 86 A. L. R., 138 (C. C. A., 10); *Young* v. *Travelers' Insurance Co.,* 68 F. (2d), 83 (C. C. A., 10).

It would be a mistake to assume that the numerous cases above cited from intermediate federal courts servilely follow *Travelers' Insurance Co.* v. *McConkey.* On the contrary, many of them contain able and exhaustive discussions of the law, and cite many cases decided by state courts which it will not be necessary to notice in this opinion.

In *Standard Life & Accident Insurance Co.* v. *Thorn-*

*ton* (C. C. A.), 100 F., 582, 587, 49 L. R. A., 116 (C. C. A., 6), the action was on a policy of accident insurance, and the insurer pleaded suicide as a defense. The trial judge charged the jury that the plaintiff, by the terms of the contract, must prove, by a preponderance of the evidence, that death was by external, violent, and accidental means, and that the affirmative of the issue, and the burden of proving these three things, stayed with the plaintiff from the beginning to the end of the trial, and further that as death apparently was caused by external and violent means, the plaintiff would be entitled to recover in the absence of proof to the contrary sufficient to overcome the presumption against suicide.

From a judgment for the plaintiff, the defendant appealed, but the appellate court (LURTON and DAY, Circuit Judges, and CLARKE, District Judge), speaking through DAY, Circuit Judge, as he then was, held that the instructions were without error, and said:

"We think this charge was correct. The death, under such circumstances, was by violent and external means, and the facts exclude every hypothesis except suicide or accident. This charge was in accordance with the decision of the Supreme Court of the United States, above quoted. As is well said in *Mallory* v. *Insurance Co.*, 47 N. Y., 52, 54 [7 Am. Rep., 410], quoted by Mr. Justice HARLAN in the *McConkey Case, supra*:

" 'The presumption is against the latter (suicide). It is contrary to the general conduct of mankind. It shows gross moral turpitude in a sane person.'

"This presumption must stand in the case, and be decisive of it, until overcome by testimony which shall outweigh the presumption. It casts upon the defendant who claims that the death was intentional the burden

of establishing it by a preponderance of testimony. Upon this subject the court charged the jury, in substance, that the burden of proving that he died by suicide was on the defendant, and, if the testimony was so evenly balanced that the jury could not decide by a preponderance of testimony, the plaintiff must recover."

In *New York Life Insurance Co.* v. *Ross*, 30 F. (2d), 80, 81 (C. C. A., 6), the action was on the double indemnity clause of a life insurance policy. It appeared that the insured, Ross, was found dead under his overturned automobile in a creek two or three feet deep, located a short distance from the main highway on which Ross had been traveling. A judgment for the plaintiff was rendered by the trial court, and on appeal it was affirmed. The court said:

"The chief contention of error is that the court erred in charging the jury that, before the plaintiff could recover, she must show that the death resulted from accidental means, that is, that it was an accident, as distinguished from intentional and purposeful death; that where the facts and circumstances leave it doubtful or questionable whether death was caused by accident or suicide, and the probability that it was caused one way is about as much as the other, then the law presumes that the death happened as the result of an accident, and such presumption of law comes to the aid of the plaintiff in establishing his or her case by a preponderance of evidence; that where this presumption of accidental death is brought into play, and is given effect by the jury, the burden of proof shifts to the defendant, and it is made incumbent upon the defendant to establish by a preponderance of evidence that the deceased lost his life as a result of self-destruction; and that the pre-.

sumption of accident stands as proof until it is overturned by evidence to the contrary.

"This, we think, is a fair statement of the charge, so far as the question of error therein is now available to the plaintiff in error by reason of specific exceptions."

And further:

"We are unable to satisfactorily distinguish the case of *Travellers' Ins. Co.* v. *McConkey,* in the Supreme Court, or more especially *Standard Life, etc., Co.* v. *Thornton,* in this circuit, from the present action, and although, except for these cases, the charge would not seem to us properly to apply the abstract principle of law, we cannot say that the court erred in following the doctrine announced by these decisions. The judgment must therefore be affirmed."

*Certiorari* was denied 279 U. S., 852, 49 S. Ct., 348, 73 L. Ed., 995.

In *Mutual Life Insurance Co. of New York* v. *Hatten,* 17 F. (2d), 889, 890 (C. C. A., 8), the law applicable to suits of this character is summarized by KENYON, Circuit Judge, as follows:

"The legal principles applicable to the situation presented are well established.

"(1) Under the terms of the policy, in order to recover the additional $10,000 as provided therein, the burden was on plaintiff to show that decedent shot himself accidentally. *Travellers' Insurance Co.* v. *McConkey,* 127 U. S., 661, 8 S. Ct., 1360, 32 L. Ed., 308; *United States Fidelity & Guaranty Co.* v. *Blum* (C. C. A.), 270 F., 946; *National Masonic Acc. Ass'n of Des Moines* v. *Shryock* (C. C. A.), 73 F., 774; *Brunswick* v. *Standard Acc. Ins. Co.,* 278 Mo., 154, 213 S. W., 45, 7 A. L. R., 1213; *Reynolds* v. *Maryland Casualty Co.,* 274 Mo., 83,

201 S. W., 1128. This does not mean that plaintiff must show the fact by direct evidence. It may be proved by proper inferences and presumptions from the facts.

"(2) Plaintiff, in carrying this burden of proof, is aided by the well-established presumption that death was not the result of suicide. *Jones* v. *Accident Ass'n,* 92 Iowa, 652, 61 N. W., 485; *Stephenson* v. *Bankers' Life Ass'n,* 108 Iowa, 637, 79 N. W., 459; *Travellers' Ins. Co.* v. *McConkey,* 127 U. S., 661, 8 S. Ct., 1360, 32 L. Ed., 308; *United States Fidelity & Guaranty Co.* v. *Blum* (C. C. A.), 270 F., 946; *Brunswick* v. *Standard Acc. Ins. Co.,* 278 Mo., 154, 213 S. W., 45, 7 A. L. R., 1213; *Jenkin* v. *Pacific Mutual Life Insurance Co. of California,* 131 Cal., 121, 63 P., 180.

"In *Michalek* v. *Modern B. of A.,* 179 Iowa, 33, 41, 161 N. W., 125, 129 (L. R. A., 1917E, 1060), the court, in referring to this presumption, said: 'Even where, as in this case, there is direct evidence that the death was caused by a weapon in the hands of the deceased himself, the presumption still prevails; because, if nothing more than that is shown, there is still room for the hypothesis that his act in that regard may have been involuntary or accidental.' See, also, *Paulsen* v. *Modern Woodmen of America,* 21 N. D., 235, 130 N. W., 231.

"(3) Where the evidence shows that insured was killed by external and violent means, there is a presumption also, when the evidence is doubtful as to whether the death was due to an accident or to suicide, that it was caused by accident. *Travellers' Ins. Co.* v. *McConkey,* 127 U. S., 661, 8 S. Ct., 1360, 32 L. Ed., 308; *Travelers' Ins. Co. of Hartford* v. *Melick* (C. C. A.), 65 F., 178, 27 L. R. A., 629; *Van Norman* v. *Modern Brotherhood,* 143 Iowa, 536, 121 N. W., 1080; *Wood* v.

154

*Woodmen*, 166 Iowa, 391, 147 N. W., 888; *Green* v. *New York Life Ins. Co.*, 192 Iowa, 32, 182 N. W., 808; *Kornig* v. *Western Life Indemnity Co.*, 102 Minn., 31, 112 N. W., 1039.

"(4) The presumption against suicide is a rebuttable one, and is to be weighed with all other facts and circumstances in evidence, *Howes* v. *Iowa Traveling Men's Ass'n* (D. C.), 241 F., 278, and, of course, cannot prevail where such facts and circumstances show a deliberate act of self-destruction. A sane person is presumed to intend the natural consequences of his act, and, if the evidence in a case shows that a party intentionally killed himself, then, of course, the presumption against suicide vanishes. If the circumstances, however, are consistent with any other reasonable hypothesis, that of suicide is excluded."

*Grosvenor* v. *Fidelity & Casualty Co.*, 102 Neb., 629, 168 N. W., 596, cited by the Court of Appeals; *Southern Surety Co. of New York* v. *Madison*, 13 Tenn. App., 657; *Frankel* v. *New York Life Insurance Co.*, 51 F. (2d), 933 (C. C. A.); *Wirthlin* v. *Mutual Life Insurance Co.*, 56 F. (2d), 137, 86 A. L. R., 138 (C. C. A.); and other cases, cited in the brief for the defendant, clearly fall under (4) of the above summary.

In *Garbush* v. *New York Life Insurance Co.*, 172 Minn., 98, 101, 214 N. W., 795, 796, the action was on the double indemnity clause of a life insurance policy. From a judgment in favor of the plaintiff, error was assigned on the ground that the trial judge erroneously gave in charge to the jury the following instruction:

"There is a presumption against self-slaughter. It is a strong presumption and not to be displaced by slight contrary proof. But it is not conclusive, unless there are

no circumstances which upon fair consideration might lead a reasonable mind to the conclusion of suicide. It is a presumption which controls decision only where there is no substantial proof to the contrary. Such a presumption is not of itself evidence. However, it must stand in the case and be decisive of it until overcome by testimony which shall outweigh the presumption. It casts upon the defendant who claims that death was intentional the burden of establishing it by a fair preponderance of the testimony."

It was held that in so charging the trial judge did not err.

*Starr* v. *Aetna Life Insurance Co.*, 41 Wash., 199, 83 P., 113, 115, 4 L. R. A. (N. S.), 636, was an action on an accident policy, which was defended on the ground that the death of the insured resulted from one of the causes enumerated in the exclusion clause of the policy. It was held that the trial judge erred in failing to charge that the burden rested on the defendant to sustain the defense by a preponderance of the evidence.

Citing 1 Cyc. Law & Proc., p. 289; *Equitable Accident Insurance Co.* v. *Osborn*, 90 Ala., 201, 9 So., 869, 13 L. R. A., 267, 269; *Anthony* v. *Mercantile Mutual Accident Association*, 162 Mass., 354, 38 N. E., 973, 26 L. R. A., 406, 44 Am. St. Rep., 367; *Grangers' Life Insurance Co.* v. *Brown*, 57 Miss., 308, 34 Am. Rep., 446; *Lancaster* v. *Washington Life Insurance Co.*, 62 Mo., 121; *Buesching* v. *St. Louis Gaslight Co.*, 73 Mo., 219, 39 Am. Rep., 503; *Huckshold* v. *St. Louis, I. M. & S. R. Co.*, 90 Mo., 548, 2 S. W., 794; *Parsons* v. *Missouri P. R. Co.*, 94 Mo., 286, 6 S. W., 464; *Crumpley* v. *Hannibal & St. J. R. Co.*, 111 Mo., 152, 19 S. W., 820; *Meadows* v. *Pacific Mutual Life Insurance Co.*, 129 Mo., 76, 31 S. W., 578, 50 Am. St. Rep.,

427; *Railway Officials' & E. Accident Association* v. *Drummond,* 56 Neb., 235, 76 N. W., 562; *Mallory* v. *Travelers' Insurance Co.,* 47 N. Y., 52, 7 Am. Rep., 410; *Allen* v. *Willard,* 57 Pa., 374; *Armstrong* v. *Cosmopolis,* 32 Wash., 110, 72 P., 1038; *Reidhead* v. *Skagit County,* 33 Wash., 174, 73 P., 1118; *Standard Life & Accident Insurance Co.* v. *Thornton,* 100 F., 582, 49 L. R. A., 116, 40 C. C. A., 564; *Home Benefit Association* v. *Sargent,* 142 U. S., 691, 692, 12 S. Ct., 332, 35 L. Ed., 1160—the court said:

"But it is needless to quote authority, for the overwhelming weight of judicial opinion sustains this rule. In fact this is not denied by the learned counsel for respondent, but he asserts that good law is not made of numbers of authorities, and that logic alone is weight. Outside of the presumption which ordinarily attaches, that the numerical weight of authority correctly expresses the law, an examination of the authorities on this proposition, together with the reasoning advanced to sustain the decisions, convinces us that the appellant's contention must be sustained, not only by the numerical strength of decision, but by the weight of logic."

The first and second paragraphs of the annotation, 4 L. R. A. (N. S.), 636, 637, are as follows:

"If any proposition of law can be said to be settled it is the one that, in actions on policies of life or accident insurance, the person seeking to recover need not allege that the death or injury of the insured did not result from any of the causes which, by the terms of the policy, would relieve the insurer from liability thereunder. The fact that the death or injury did result from such a cause is a matter of affirmative defense, and must be averred by the insurer in its plea or answer. The

cases to this effect are numerous, and, in addition to those cited in the opinion above, attention may be called to the following: *Travelers' Protective Ass'n* v. *Gilbert*, 111 F., 269, 55 L. R. A., 538, 49 C. C. A., 309; *Dennis* v. *Union Mut. L. Ins. Co.*, 84 Cal., 570, 24 P., 120; *Metropolitan L. Ins. Co.* v. *McKenna*, 73 Ill. App., 283; *National Ben. Ass'n* v. *Bowman*, 110 Ind., 355, 11 N. E., 316; *Freeman* v. *Travelers' Ins. Co.*, 144 Mass., 572, 12 N. E., 372; *Hester* v. *Fidelity & C. Co.*, 69 Mo. App., 186; *Germain* v. *Brooklyn L. Ins. Co.*, 30 Hun. (N. Y.), 535; *Latimer* v. *Sovereign Camp. W. O. W.*, 62 S. Ct., 145, 40 S. E., 155; *Employers' Liability Assur. Corp.* v. *Rochelle*, 13 Tex. Civ. App., 232, 35 S. W., 869.

"In accordance with the general rule of evidence making it incumbent upon a party to prove the substantive facts that he is required to aver in his pleading, it follows that, in actions on policies of life or accident insurance, the burden of proof is on the insurer to show by a fair preponderance of the evidence that the death or injury for which recovery is sought, resulted from a cause which, by the terms of the policy would avoid the insurance. All the decisions are in harmony with *Starr* v. *Aetna L. Ins. Co.*, on this proposition. *Somerville* v. *Knights Templars & M. Life Indemnity Ass'n*, 11 App. D. C., 417; *Supreme Tent K. of M.* v. *Stensland*, 206 Ill., 124, 68 N. E., 1098, 99 Am. St. Rep., 137; *Coburn* v. *Travelers' Ins. Co.*, 145 Mass., 226, 13 N. E., 604; *John Hancock Mutual Life Ins. Co.* v. *Moore*, 34 Mich., 41; *Stevens* v. *Continental Casualty Co.*, 12 N. D., 463, 97 N. W., 862; *Interstate Casualty Co.* v. *Bird*, 18 Ohio, Cir. Ct. R., 488."

Other cases in accord are cited in annotations in 130 Am. St. Rep., 269; 9 Ann. Cas., 919; Ann. Cas., 1916B,

229; 50 L. R. A. (N. S.), 1008-1011. See, also, Vance on Insurance (2 Ed., 1930), p. 811, notes 47, 48.

Counsel for defendant contend: (1) That the foregoing authorities should be distinguished from the case at bar, in that such decisions were based on the fact that the insurer interposed a special plea of suicide, whereas here the defendant interposed two pleas of the general issue, and the fact that "defendant may have suggested suicide as a cause of death did not shift the burden of proof on the defendant to show that death was the result of suicidal intent;" and (2) that what counsel for the defendant call modern cases should be followed in preference to *Travellers' Insurance Co.* v. *McConkey,* and the scores of subsequent decisions, federal and state, based on that case, which, by fair implication, defendant insists were erroneously decided.

The principles of classical common-law pleading have been relaxed materially in this state by statutes as well as by long-established practice.

Code of 1932, sections 8765, 8766, and 8767, provide as follows:

"8765, 4634 (2913). The defendant may enter a general denial of the plaintiff's cause of action, equivalent to the general issue.

"8766, 4635 (2914). He may plead such general plea, whether such plea would have been good heretofore or not.

"8767, 4637 (2916, 2917). Or he may on motion of plaintiff, entered of record, be ordered to plead specially his defenses, in which case he shall state the facts relied on, truly, and briefly as may be, and no matter of defense not pleaded shall be shown in evidence; and to

such special plea the plaintiff shall reply, and the pleading shall proceed to issue.''

It is the object of section 8767, modifying the prior statute, to enable a plaintiff to be forewarned of every matter of defense intended to be relied on by a defendant, and to require a defendant to make explicit all matters of defense which otherwise would be implicit in pleas of the general issue.

 Manifestly had the plaintiff invoked this section, and the defendant had failed to plead suicide, it could not have introduced evidence in support of the defense, and consequently the issue based on suicide would have disappeared from the case.

· The fact that the plaintiff failed to invoke the section does not change the result, for under our system of pleading in actions at law, pleas of the general issues of *nil debet* and *non assumpsit* admit, with a few exceptions not material here, every defense, whether by way of denial or avoidance. Caruthers' History of a Law Suit (5 Ed., 1919), section 12, p. 193; *Railroad Co.* v. *Wade*, 1 Tenn. Civ. App., 780, 803.

The statement in *Associated Indemnity Corporation of San Francisco, Cal.*, v. *McAlexander* (Tenn. Sup.), 79 S. W. (2d), 556, 564, that a defense of lack of notice to the insurer could not be raised under the plea of the general issue, was based on the fact that as the action was on a contract, the defendant's plea of the general issue of "not guilty" was a nullity. *Insurance Co.* v. *Thornton*, 97 Tenn., 1, 9-13, 40 S. W., 136.

The alleged distinction between suggesting and pleading a defense, while ingenious, is too jejune to win the approval of the court. Its acceptance would create an anomaly in pleading. If the defendant's contention

should be adopted that while suggesting suicide as the means by which death was caused, it did not rely on the clause of the policy excluding suicide, it could obtain the full benefit of such a defense by masking it under pleas of the general issue and be relieved of the accompanying burden attached to it if it had been compelled to plead it specially under section 8767.

The claim of the defendant that it suggested, but did not plead, suicide as a defense, is not borne out by the record. All of the plaintiff's witnesses were cross-examined in an attempt to show that the insured committed suicide, and the proof introduced by the defendant was intended to show that, due to the mechanism of the pistol, it was practically impossible that the death of the insured could be attributed to any other cause than intentional self-destruction. To such a degree did the defendant conceive that the evidence adduced by it supported its contention of suicide, that, as has been stated, it moved the court to direct a verdict in its favor on the ground that suicide was the only reasonable inference that could be drawn from all of the evidence in the case. Whether a plea is one merely in denial or of an affirmative character is tested by the subject-matter on which it is based, and as the defense here clearly was based on the suicide clause of the policy, the contention that it was not an affirmative defense cannot be accepted by the court.

*Whipple* v. *McKew,* 166 Tenn., 31, 34, 60 S. W. (2d), 1006, 1007, is not to the contrary. In that case the allegation of the bill that the complainant was a legitimate son was denied by the answer. The complainant contended that the presumption of legitimacy cast on the defendants the burden of persuading the jury by a pre-

ponderance of all the evidence that he was illegitimate. In rejecting the contention, the court said:

"This court has pointed out in a number of cases that, where the burden is on a plaintiff to establish a fact, the burden never shifts; and, where a presumption arises, it does not convert the defendant's general issue into an affirmative defense, but makes it incumbent on him to present his proofs; and, where all the evidence is in, the question for decision is whether the preponderance is with the plaintiff. *Shockley* v. *Produce & Ice Co.,* 158 Tenn. [148], 155, 11 S. W. (2d), 900; *Lewis* v. *Casenburg,* 157 Tenn., 187, 7 S. W. (2d), 808, 60 A. L. R., 254; *North Memphis Sav. Bank* v. *Union Bridge & Const. Co.,* 138 Tenn. [161], 185, 196 S. W., 492."

*Watkins* v. *Prudential Insurance Co.,* 315 Pa., 497, 173 A., 644, 95 A. L. R., 869, annotation, is relied on by the defendant in support of its contention that the trial judge erred in charging the jury in the particulars hereinbefore stated. The action was on the double indemnity clause of a life insurance policy, and the defendant contested the suit on the ground that death was not accidental but intentional.

The court charged the jury: (1) That as the death of the insured from the inhalation of monoxide gas resulted from external and violent means, there was a presumption that it was accidental and not intentional; (2) that as death was caused by external and violent means, the necessary element of accidental death was *prima facie* supplied by the presumption against suicide; (3) that as the insured died a violent death, viz., by carbon monoxide poisoning, the law presumed that his death was not by suicide, but was accidental; (4) that the presumption had the same probative force and

effect as direct evidence of accidental death; (5) that unless the jury found that the evidence of the defendant outweighed the presumption that the insured did not commit suicide, the verdict must be for the plaintiff; and (6) the court refused to charge defendant's reques! that there was no presumption in the case that the insured died an accidental death.

It was held that in so charging and refusing to charge, the trial court committed error.

Citing many cases, and relying principally on 5 Wigmore on Evidence (2 Ed.), section 2491, and the late Prof. Thayer's Storrs' Lectures 1896 (Thayer Treatise on Evidence [2 Ed., 1898], 551 *et seq.*, Appendix B), a criticism of the opinion of Mr. Justice WHITE in *Coffin* v. *United States* (1895), 156 U. S., 432, 15 S. Ct., 394, 39 L. Ed., 481, concerning the presumption of innocence, it was held that the so-called "presumption against suicide" was neither a procedural expedient, nor a conclusion based on the known results of wide human experience, but it was merely a permissible consideration of the nonprobability of death by suicide.

The court stated that while the jurors were entitled to consider on an even balance all of the evidence as between accidental death and suicide, the probabilities against suicide, the court below erred in its interpretation and application of the presumption against suicide, in that it attributed to the ordinary probability that a human being will not commit suicide, the force of a fact in evidence shifting the burden of proof to the defendant.

The opinion does not cite the McConkey Case nor any of the numerous federal and state cases in accord with it, and so far as this court is advised it is the only de-

cision of a court of last resort which definitely rejects the doctrine of that case.

In the division of the annotation treating of the presumption against suicide in insurance cases, *Modern Woodmen* v. *Kincheloe* (Ind. App., 1910), 93 N. E., 452; *Woodmen of the World* v. *Alexander* (Tex. Civ. App., 1922), 239 S. W., 343; *Griffith* v. *Continental Casualty Co.* (1923), 299 Mo., 426, 253 S. W., 1043; *Frankel* v. *New York Life Insurance Co.* (C. C. A., 10, 1931), 51 F. (2d), 933; *Young* v. *Travelers' Insurance Co.* (D. C., 1933), 2 F. Supp., 624; *Wirthlin* v. *Mutual Life Insurance Co.* (C. C. A., 10, 1932), 56 F. (2d), 137, 86 A. L. R., 138; and *Mutual Life Insurance Co.* v. *Maddox,* 221 Ala., 292, 128 So., 383, are cited in support of the proposition that the presumption that death resulted from an accident rather than from suicide is not evidence, and cannot be treated as evidence by the jury in reaching a verdict.

In the first three cases cited, it was held that the duty rested upon the plaintiff, as holding the affirmative of the issue, to establish, by a preponderance of all the evidence, that the death of the insured resulted from external, violent, and accidental means; that the presumption against suicide was a mere procedural expedient, which operated to throw upon the party against whom it was raised the duty of going forward with the evidence; that it performed no other function, and did not so operate as to shift the general burden of proof to the defendant, but as soon as the defendant had adduced contrary evidence, the presumption disappeared, and with the facts already before the jury, the presumption against suicide had no further procedural purpose to serve; the burden of proving accidental death still resting on the plaintiff.

In *Frankel* v. *New York Life Insurance Co.*, 51 F. (2d), 923, 935 (C. C. A., 10), the action was on a double indemnity policy in which the evidence showed that death by suicide was the only reasonable inference that could be drawn from the proof. In discussing the presumption against suicide, the court said: "But the plaintiff had the burden of proving the fact necessary to establish the liability of the insurance company, and the legal presumption that might aid her could be of value only under circumstances leaving the cause of death in doubt. *Supreme Tent K. of M.* v. *King* (C. C. A.), 142 F., 678; *New York Life Insurance Co.* v. *Bradshaw* (C. C. A.), 2 F. (2d), 457; *New York Life Insurance Co.* v. *Weaver* (C. C. A.), 8 F. (2d), 680; *Mutual Life Insurance Co.* v. *Hatten* (C. C. A.), 17 F. (2d), 889."

As has been heretofore stated, this case, as well as *Wirthlin* v. *Mutual Life Insurance Co.* (C. C. A., 10), 56 F. (2d), 137, 86 A. L. R., 138, clearly fall within (4) of the summary of KENYON, Circuit Judge, in *Mutual Life Insurance Company* v. *Hatten* (C. C. A., 8), 17 F. (2d), 889, 890, which has been quoted in a previous part of this opinion.

*Young* v. *Travelers' Insurance Co.* (D. C.), 2 F. Supp., 624, 628, cites but a sentence from *Frankel* v. *New York Life Insurance Co., supra,* that: "Legal presumption that death was due to accident rather than suicide disappears where there is evidence of suicide."

On appeal, the judgment was reversed on other grounds, 68 F. (2d), 83 (C. C. A., 10), and the appellate court cited a part of the summary of Judge KENYON in *Mutual Life Insurance Co.* v. *Hatten* (C. C. A., 8), 17 F. (2d), 888, 889, and also *Frankel* v. *New York Life In-*

*surance Co., supra,* and *Wirthlin* v. *Mutual Life Insurance Co.* (C. C. A., 10), 56 F. (2d), 137, 86 A. L. R., 138.

In *Mutual Life Insurance Co.* v. *Maddox,* 221 Ala., 292, 128 So., 383, 385, the insured was killed by a pistol shot, and the proof tending to show suicide was entirely circumstantial. The court charged the jury that there was a presumption against suicide, and it refused a special request that such presumption was not evidence, and could not be treated as evidence by the jury in reaching a verdict.

Referring to the treatment of presumption by Thayer, Treatise on Evidence, 314, Appendix B, p. 551, and 5 Wigmore on Evidence (2 Ed.), p. 505, as criticizing *Coffin* v. *United States,* 156 U. S., 432, 15 S. Ct., 394, 39 L. Ed., 481, the court observed that in previous cases it had followed 1 Greenleaf on Evidence, section 34, and *Coffin* v. *United States,* and that it had also applied the same legal effect of the presumption of innocence to civil cases, where relevant, including suits on insurance policies. *New York Life Insurance Co.* v. *Turner,* 213 Ala., 286, 104 So., 643. Declining to follow Thayer and Wigmore, the court said:

"There are some recent cases which adopt the criticism of the *Coffin Case, supra,* and have applied such modified doctrine to the presumption against suicide in insurance cases. *W. O. W.* v. *Alexander* (Tex. Civ. App.), 239 S. W., 343; *Griffith* v. *Continental Cas. Co.,* 299 Mo., 426, 253 S. W., 1043; 6 Cooley's Briefs on Ins. (2 Ed.), 5457, 5458.

"We think that the decisions of this court firmly fix the rule as stated by Greenleaf and in the Coffin Case as the law of this state.

"We cannot therefore apply to the presumption of

innocence, either in a criminal or civil case, the mere administrative features of those presumptions intended only to shift the burden of proceeding with the evidence. We think this presumption of innocence is a substantive right and not merely a technical incident of the trial wrought for administrative purposes, and that it should at no time be treated as having spent its force until the evidence is sufficient in the judgment of the jury to overcome it. There was therefore no error in refusing the charge.''

In *New York Life Insurance Co.* v. *Ross,* 30 F. (2d), 80, 83 (C. C. A., 6), the court said:

''So far as we are advised, the McConkey Case has never been criticized in the Supreme Court, and the Thornton Case has not been qualified nor overruled in this circuit. The former is binding upon this court, and both were binding upon the District Court. The doctrine announced in both thus becomes the law of all cases presenting the identical question. The situation is a most appropriate one for application of the doctrine of *stare decisis.*''

As *Insurance Co.* v. *Bennett* (1891), 90 Tenn., 256, 16 S. W., 723, 25 Am. St. Rep., 685, has never been criticized, nor modified, by this court, but on the contrary has been uniformly approved and applied in every case of a like character which has been presented for decision, this court, with equal propriety, could follow the Supreme Court of Alabama, and the Circuit Court of Appeals for the Sixth Circuit, and regard the question here presented as foreclosed by applying the rule of *stare decisis.*

It is common learning that presumptions have been created by courts from time to time as convenient aids

in the conduct of litigation, and while it is true that there is much confusion and conflict concerning their nature and function, and this to a degree that contradictory decisions can be found in the same jurisdiction (Morgan, Some Observations Concerning Presumptions, 44 Harvard Law Review, 906, 920, 921), nevertheless, as experience has justified the ends for which they were called into being, they should not be discarded, because forsooth in some of their aspects, they may not fit into the framework of logical analysis.

It is well to remember that more than fifty years ago, the late Mr. Justice HOLMES said: "The life of the law has not been logic: it has been experience." The Common Law, 1 (1881).

■ ■ From a consideration of the cases cited in the briefs of counsel, as well as of many others found by the court's independent investigation, it is believed, with reasonable confidence, that the decided weight of authority, federal and state, supports the following propositions:

(1) In a suit on an accident policy where the plaintiff can recover only for an accidental death, the affirmative of the issue is on the plaintiff from the beginning to the end of the trial, and the burden of proof in its general sense is on the plaintiff to show an accidental death.

(2) This burden is met, and a *prima facie* case made out, when the plaintiff has shown a death by external and violent means under circumstances not inconsistent with accident.

(3) Where a death by external and violent means is shown, and there is no proof as to how it was caused, or the attendant circumstances leave the question doubtful, or the proof concerning them is conflicting or not

inconsistent with accident, the law presumes an accidental death, and the burden of proof, in its secondary sense, is cast on the defendant, and requires it to prove by a fair preponderance of the evidence that death was caused by suicide.

(4) This presumption is not displaced by proof of circumstances which merely tend in a greater or less degree to show suicide, but in such case it is a question for the jury whether they overturn the presumption.

(5) Where there is no proof indicating either accident or suicide in case of a death by external violence, or where the proof is equally balanced, or is conflicting, this presumption comes to the aid of the plaintiff, in making out his or her case.

(6) Where death by external violence is shown by facts or circumstances, inconsistent with accident, the presumption against suicide is displaced, and no longer continues to operate in favor of the plaintiff.

Tested by these propositions, the charge did not contain any error prejudicial to the defendant, and the Court of Appeals erred in holding to the contrary.

The seventh assignment, not specifically dealt with by the Court of Appeals, is to the effect that the trial judge erred in stating several times: "Did Prieto commit suicide?" The criticism is that this sentence was so emphasized in the charge that it might reasonably have led the jury to believe that the primary issue in the case was: "Did the insured commit suicide?" The phrase was used first in antithesis to another interrogatory phrase: "Was the injury effected through accidental means?" Subsequently, it was used twice in instructing the jury as to the defenses interposed, and

especially as to the burden of proof resting on the defendant to prove, by a preponderance of the evidence, that Prieto committed suicide.

Considering the charge in its entirety, the court is of the opinion that as the jury was properly charged that the burden rested upon the plaintiff to show, by a preponderance of all the evidence, that the death of the insured was effected solely by violent, external, and accidental means, repetition by the trial judge of the sentence complained of did not mislead the jury to a degree that should be held reversible error.

Another assignment sustained by the Court of Appeals is based on the alleged error of the trial judge in charging that the burden was on the defendant to "establish" the defense of suicide by a preponderance of the evidence, and that the plaintiff was entitled to recover unless the evidence introduced overcame the presumption, and "satisfied" the jury that death was voluntary. The criticism is leveled at the use of the words "established" and "satisfied."

In sustaining this assignment, the Court of Appeals relied on *Knights of Pythias* v. *Steele,* 107 Tenn., 1, 63 S. W., 1126, where it was held to be erroneous to charge that the burden rested on the insurer, "to establish to the satisfaction of the jury by a preponderance of the evidence," that the insured committed suicide, as such an instruction was legally equivalent to charging that the burden rested on the insurer to prove suicide beyond the pale of reasonable doubt. The charge in that case did not instruct the jury that the presumption against suicide was a disputable one.

In *Fisher* v. *Insurance Co.,* 124 Tenn., 450, 508, 509, 138 S. W., 316, 330, Ann. Cas., 1912D, 1246, a like crit-

icism was made of the use of the word "establish" in an instruction as to the burden of proof on the defense of suicide. The court, distinguishing *Knights of Pythias* v. *Steele, supra,* held that as the objectionable word was immediately qualified by the phrase "by the preponderance of the evidence," and further that as the jury was instructed that the presumption was a disputable one, and could be overcome by a preponderance of the evidence, the jury could not have gotten from the whole excerpt the idea that the presumption must be overcome by evidence showing the fact to be otherwise beyond reasonable doubt.

In the case at bar, the word "establish" is followed immediately by the qualifying phrase "by a preponderance of the evidence." The word "satisfied" is used in a sentence immediately following. And further, as the trial judge charged the presumption against suicide was a disputable one, and could be overcome by a preponderance of the evidence, the court is of the opinion that the jury reasonably could not have understood the charge on this point to mean that the insurer had the burden of proving suicide beyond a reasonable doubt.

The challenged language is no stronger than that used in *Fisher* v. *Insurance Co., supra,* and the holding in that case controls the disposition of this assignment.

 The eighth assignment of the defendant, sustained by the Court of Appeals, is based on the following excerpt from the charge:

"The defendant in the case has introduced Colonel Jones and Mr. Higgins, who have testified in the case as expert witnesses on fire arms, and the mechanism of pistols. It is your duty to scrutinize the expert testimony with care, and consider it in the light of the

learning and character and experience of such expert witnesses, and give it whatever weight and credit you think it is entitled to in the case."

The foregoing instruction was held to be erroneous, on the ground that the court singled out the two expert witnesses, introduced by the defendant, and instructed the jury to scrutinize their testimony carefully, without making any reference to the alleged expert witness, Brush, introduced by the plaintiff.

Without comment, the Court of Appeals held that this assignment was well made.

Recalled as a witness in rebuttal, Brush professed merely to have a general knowledge of firearms gained by his service in the World War, and as a peace officer of Obion county. His testimony in rebuttal was to the effect that automatic pistols of the character of the one owned by Prieto could be accidentally discharged, as Jones and Higgins had testified on cross-examination, and he agreed with them that the only way in which Prieto's pistol could have been fired was by exerting simultaneous pressure on the safety device at the back of the handle, and on the trigger. He was not introduced as a professed expert witness in the sense that Jones and Higgins were.

Evidently the trial judge did not consider that Brush was offered as an expert witness, nor seemingly did counsel for defendant, as no special request was tendered by them to include Brush's name with those of Jones and Higgins, although seventeen special requests, covering every aspect of the case, were tendered at the conclusion of the general charge. If the assignment is technically well made, no prejudicial error resulted to

the defendant, as Brush's testimony was entirely in harmony with that of Jones and Higgins.

The court is of the opinion that the Court of Appeals erred in sustaining defendant's assignments 4, 5, 6, 7, 8, 9, 10, 12, 15, 16, 19 and 20.

Other assignments of the defendant were overruled by the court below, but as they are not reassigned in its petition, they cannot be considered.

It results that the judgment of the Court of Appeals is reversed, and that of the circuit court affirmed, at the cost of the Provident Life & Accident Insurance Company.