HASSENCAMP v. MUTUAL BEN. LIFE INS. CO.

(Circuit Court of Appeals, Fourth Circuit. February 3, 1903.)

No. 464.

1. LIFE INSURANCE—ACTION ON POLICY—PROOFS OF DEATH AS EVIDENCE.
   Proofs of death furnished by the beneficiary in a life insurance policy, as required by its terms, are admissible on behalf of the insurance company in an action on the policy, and are prima facie proof against the plaintiff of the facts therein stated, including the fact of suicide, and are conclusive, unless the plaintiff shows that the statements made were erroneous, or were given through mistake or misapprehension.

2. SAME—DEFENSE OF SUICIDE—EVIDENCE.
   Where the proofs of death of an insured, furnished the company and introduced in evidence on its behalf in an action on the policy, contained, as required by the policy, a certified copy of the proceedings at a coroner's inquest, including the verdict finding that the insured committed suicide, which avoided the policy by its terms, and also a certificate of the attending physician to the same effect, such evidence was not overcome by testimony merely tending to show a want of motive, and that insured was a man of good character and habits, and the direction of a verdict for defendant was proper.

In Error to the Circuit Court of the United States for the District of Maryland.

The facts in this case are substantially as follows: The defendant in error is a corporation under the laws of New Jersey, doing a life insurance business in the state of Maryland. On the 11th of October, 1899, Alexander Hassencamp applied for a policy, and in consideration of the payment of the required premium the company issued to him on that day a life policy for the sum of $3,000, in which Juliet V. Hassencamp, his wife, the present plaintiff in error, was the beneficiary. Alexander Hassencamp died on the 6th day of June, 1901, at Dr. Walter's sanitarium, in Wernersville, Pa. One of the stipulations contained in the application made by Hassencamp for the policy was as follows: "I also agree that if, within two years from the date of this policy, I shall, without the consent of the company, reside or

¶ 1. See Insurance, vol. 28, Cent. Dig. §§ 1359, 1702.

¶ 2. Suicide as a defense to action on life insurance policy, see notes to Ætna Life Ins. Co. v. Florida, 16 C. C. A. 623; Fidelity & Casualty Co. of New York v. Egbert, 28 C. C. A. 284.

travel elsewhere than in or to the United States, Canada, or Europe, * * * or within such period shall commit suicide, while sane or insane, the policy hereby applied for is to be null and void." Shortly after the death of the assured, the plaintiff in error made her claim to the company for the loss. She followed the instructions issued by the insurance company for making death claims, among which was one as follows: "When a coroner's inquest is held, a certified copy of the inquest must accompany the proofs." In accordance with this requirement, the plaintiff in error attached to her proof of loss a certified copy of the proceedings and verdict of the coroner's inquest, held over the body of her deceased husband in the county of Berks, where he died, in which the jury found "that, according to the evidence and inspection of the body, we, the jury, agree to the following verdict: that the above-named committed suicide by shooting himself in the right temple with a pistol, and in our opinion the act was premeditated." The plaintiff in error also accompanied her claim by the certificate of the attending physician, Robert Walter, who stated that he was the attending physician of Alexander Hassencamp; that he had known him three weeks; that his final illness was complicated with or preceded by another disease called "insomnia melancholia"; that he had died from suicide by shooting. On receipt of the claim, accompanied by these proofs, the insurance company declined to pay the insurance money, on the ground that the proofs of loss sent up showed that the death of the assured was by suicide, within two years from the issuing of the policy; and thereupon this suit was brought in the Circuit Court of the United States for the District of Maryland, and was tried before a jury at April term, 1902, of said court. The plaintiff in error declared for the amount of the policy, and defendant in error denied the right of recovery on the ground of suicide of assured within two years from date of policy.

The plaintiff in error, to support the issue on her part, proved the execution of the policy, the punctual payment of the two yearly premiums, the death of the assured, furnishing of proofs of death, and refusal of the company, as set out in a letter, to pay the amount of the policy on the ground that the insured had committed suicide, in violation of an agreement contained in his application for the policy. She also proved that the proofs of death were furnished on blanks received from the company for that purpose, and were made out by her two brothers-in-law, for her, by her order. Thereupon she rested her case in chief. The defendant in error then, over the objection of the plaintiff in error, introduced the proofs of death which had been forwarded to the company. These consisted of the statement of the plaintiff in error, giving number and amount of the policy, the place of her husband's death, and that she was the widow and beneficiary in the policy; the statement of a friend as to the death of the assured and the identity of the body; the statement of the attending physician; the undertaker's certificate; and a certified copy of the coroner's inquest. The admission of this evidence for the defendant in error constitutes the first bill of exceptions. The defendant in error rested, and the plaintiff in error, in rebuttal, introduced one Liszman, who testified that he knew Alexander Hassencamp in his lifetime; that he saw his body on the morning of the 7th of June, 1901, the day after his death, in the undertaking establishment, about a mile from the sanitarium; that there was a wound in the head of the deceased in the temple, very small, but that there were no powder marks about it. The plaintiff in error, in her own behalf, testified that the deceased had been in the employment of Ullman, Boykin & Co., at Baltimore, for about 10 years; that he was suffering with nervous prostration, and had gone to the sanitarium on the 18th of May preceding his death; that he was getting a salary of $2,100 a year, and that his place was kept open for him by his employers; that he had some money in bank, and was in easy circumstances; that the relations between him and his family were always affectionate; that he was temperate and regular in his habits, and that she never knew him to have a pistol; that the news of his death came to her as a surprise. W. A. Boykin was introduced by the plaintiff in error, and testified that Hassencamp had been employed by the firm to which he belonged as a bookkeeper and confidential secretary,

for about 9 years, at a salary of $2,100 a year, or thereabouts; that Hassencamp was an industrious, high-toned man, of good habits and correct in his business transactions; that his health broke down on the 6th of December 1900, and that he was given a leave of absence without limit, for rest and recuperation; that Hassencamp went first to New York, and then to Bermuda, and while in the latter place he wrote letters to the house, which were very intelligent; that there was nothing in his actions while in the employment of the firm to lead to the fear that he might commit suicide. He was assured, when he left, that his place would be kept open for him whenever he wanted it. This concluded the testimony.

Thereupon the plaintiff in error offered the following prayers for instruction to the jury: "(1) The plaintiff prays the court to instruct the jury that the finding of a man dead, with a bullet hole in his head, in the absence of other explanatory facts and circumstances, establishes accidental death; and the burden is on the defendant to show by additional facts and circumstances that the said death was due to suicide. (2) The plaintiff prays the court to instruct the jury that, where death results from a pistol shot wound, self-destruction is not to be presumed, but the law presumes the wound was the result of accident; and the burden of proof is upon the defendant to show, by a preponderance of testimony, that the wound was intentionally self-inflicted, and that it was not the result of accident; and that, unless the jury find from the evidence that the insured intentionally shot himself, their verdict must be for the plaintiff. (3) The plaintiff prays the court to instruct the jury that, the defendant having by its plea alleged that the death of the insured was caused by suicide, the burden of proving this allegation by a preponderance of evidence rests on the defendant. The presumption is that the death was not voluntary; and the defendant, in order to sustain the issue of suicide, must overcome this presumption and satisfy the jury that the death was voluntary. (4) The plaintiff prays the court to instruct the jury that, if the jury find from the evidence that the death resulted from violence, the presumption of law is that it resulted from accident or assassination; and, before the jury can find that the death was due to suicide, they must be satisfied by a preponderance of evidence that the death was not due to either accident or assassination. (5) The plaintiff prays the court to instruct the jury that the burden of proving by a preponderance of evidence that the death was due to suicide is not shifted by the introduction of the proofs of death, and it is not the duty of the plaintiff to satisfy the jury by a preponderance of evidence that her husband died otherwise than by his own hand and deliberate act; and that the proofs of death are only admitted in this case as admissions by the plaintiff, but the weight to be given to such admissions is to be determined by the jury, having regard to the circumstances under which and the purposes for which they were so furnished by the plaintiff to the defendant. (6) The plaintiff prays the court to instruct the jury that the proofs of death furnished by plaintiff to defendant are not prima facie proof of the fact that the insured died by suicide. (7) The plaintiff prays the court to instruct the jury that where it appears that death was the result of accident or suicide, and there is no evidence to show which was the cause, or where from all the evidence the cause of death may be equally referred to either accident or design, the presumption of law is that the death was accidental. (8) The plaintiff prays the court to instruct the jury that, if they find a verdict for the plaintiff, the measure of damages is the face value of the policy, with interest, in the discretion of the jury."

The defendant in error offered the following prayer: "That the statements contained in the proofs of loss offered in evidence by defendant are binding upon plaintiff to the extent of being prima facie evidence against the plaintiff of the facts stated therein as to the manner or cause of the death of insured, except in so far as they may show by proof that they are mistaken or erroneous; and as the plaintiff has offered no legally sufficient evidence that the statements contained in the same, that Alexander Hassencamp died by suicide within less than two years from the issue of the policy, are erroneous, the plaintiff is not entitled under the terms of the policy to recover, and the verdict of the jury must be for the defendant."

The court rejected all the prayers of the plaintiff in error, and granted the prayer offered by the defendant in error, to which action of the court the plaintiff excepted. In response to the instructions of the court, the jury rendered a verdict for the defendant, and judgment was accordingly entered. The assignment of errors is based upon the exceptions taken as above indicated.

Robert M. McLane and Edgar Allan Poe, for plaintiff in error.
John J. Donaldson and John D. Parker, for defendant in error.

Before GOFF, Circuit Judge, and PURNELL and BOYD, District Judges.

BOYD, District Judge. The plaintiff in error, in the brief and argument in this case, does not rely upon the exception based upon the objection interposed to the admissibility of the proofs of death as testimony, and the sole question presented here is that raised by the refusal of the court to give the instructions requested by the plaintiff in error, and giving instead the instructions requested by the defendant in error. The counsel for the plaintiff in error take the position that the main point in the case is the effect of the proofs of death furnished by the plaintiff in error, and it is insisted that, conceding the admissibility of these proofs, the weight to be attached to them is to be determined by the jury, having regard to the person by whom, to the circumstances under which, and the purposes for which they were furnished. In the case of Insurance Co. v. Newton, 89 U. S. 32, 22 L. Ed. 793, one of the points involved was as to the effect of proofs of death furnished in making claims for payment under a life policy of insurance. In that case, as in this, the proofs consisted of several affidavits, giving the time, place, and circumstances of the death, and the record of the finding of the jury upon a coroner's inquest; the finding being that the deceased came to his death by a pistol shot fired by a pistol in his own hand, through the heart. In that case, also, upon the trial, as in this, the plaintiff made proof of the death of the assured, the execution of the policy, the presentation of proofs of death, and the refusal of the company to pay on the ground of suicide. The insurance company offered reply to this testimony by the introduction of the proofs of death forwarded to the company. These were excluded by the court. In passing upon the exception to the exclusion of this testimony, Mr. Justice Field, in delivering the opinion of the court, says:

"But the court also erred in excluding from the jury the proofs presented of the death of the insured when offered by the company. * * * The proofs presented were admissible as representations on the part of the party for whose benefit the policies were taken as to the death and manner of the death of the insured. They were presented to the company in compliance with the condition of the policy requiring notice and proofs of death of the insured as preliminary to the payment of the insurance money. They were intended for the action of the company, and upon their truth the company had a right to rely. Unless corrected for mistake, the insured was bound by them. Good faith and fair dealing required that she should be held to representations deliberately made, until it was shown that they were made under a misapprehension of the facts, or in ignorance of material matters subsequently ascertained."

And, following this line, it is further held in the same case that:

"The preliminary proofs are admissible as prima facie evidence of the facts stated therein against the insured and on behalf of the company."

It is held, however, in the case of Supreme Lodge v. Beck, 181 U. S. 49, 21 Sup. Ct. 532, 45 L. Ed. 740, that the statements contained in the proofs of death in presenting a claim to an insurance company for loss are not an estoppel; that the party furnishing such proofs has the right to explain them, to show that they are erroneous, or were given by mistake or under a misapprehension. Until such explanation, however, those proofs are to be taken as true, and are, as before stated, prima facie evidence of the facts they contain. The question before us, therefore, is, did the plaintiff in error, after the introduction of the proofs of loss, which she furnished to the company, containing a certificate of the attending physician that the assured died from suicide, and also a certified copy of the coroner's inquest, in which the jury found as a fact that the deceased came to his death by suicide, make any explanation of these facts, or introduce testimony showing that in furnishing them she had been mistaken, or that they were erroneous.

As shown in the statement of facts, only three witnesses were introduced in rebuttal by the plaintiff in error. One of them was Liszman, who testified that he saw the dead body of Hassencamp; that there was a small wound in the temple of the deceased, but no powder marks whatever about him. The plaintiff in error herself was the next witness, and she said the deceased had gone to the Wernersville sanitarium on the 18th day of May, 1901, for his health, as he was suffering from nervous prostration; that his home relations were happy; that he was not worried about money matters; that he was a man of regular habits, and not given to drinking; that she had no reason to apprehend that he would commit suicide; that the news of his death, which she received on the afternoon of the day it occurred, came to her as a great surprise; that she never knew him to have a pistol; and that nothing was found among his papers indicating that he contemplated suicide. The other witness was Boykin, the employer of the deceased, whose testimony was directed to deceased's general good character and habits, his easy circumstances, and absence of motive to commit suicide. This witness had not seen the deceased for several months previous to his death.

There was nothing in the testimony of these witnesses to contradict the fact stated in the proofs that the assured came to his death by suicide. It was not suggested by the plaintiff in error that she furnished the proofs under any misapprehension whatever, and she gave no explanation of the cause of her husband's death inconsistent with the facts contained in the proofs. It is true that the testimony in rebuttal tended to prove absence of motive to suicide; but was this sufficient to overcome the fact distinctly stated in the proofs of death presented to the insurance company? This evidence did not directly contradict that fact. It did not show that the statement in the proofs was erroneous. We think, therefore, that the instructions to the jury, as given by the Circuit Court, were in entire harmony with the law as laid down in the decisions above quoted.

There is no error, and the judgment is affirmed.