NEW AMSTERDAM CASUALTY CO. *v.* MABEL RUST.

(*Nashville,* December Term, 1931.)

Opinion filed February 13, 1932.

J. E. TRAVIS, for plaintiff in error.

A. W. STOCKELL and JOHN E. GARNER, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is a suit on two accident insurance policies, similar in their provisions, tried before the court without the intervention of a jury. The court found for the original plaintiff and entered judgment for the face value of both policies, together with a 25 per cent penalty. The insurance company has appealed. The case was tried upon the following stipulation of facts:

"1. That the two policies mentioned in the declarations were issued to the deceased, Horace Cornelius, on or about May 25, 1929, for a consideration of $0.50 per year paid as premium.

"2. That each of said policies provided indemnity against loss of life in the sum of $250, provided bodily injury effected as hereinafter stated was the sole cause of the death of the insured within one month from the date of the event causing such injury if occurring 'while actually riding in a private automobile provided the insured shall not be engaged in automobile racing or trials of speed, and shall not be or have been hired as a driver or operator thereof and caused directly in consequence of a collision or other accident to the conveyance in which the insured is so riding.' Said policies of insurance marked exhibit 'A' to the declarations were in effect at the time of the accident hereinafter set forth and may be treated as part of the evidence in this cause.

"3. That on the morning of September 6, 1929, the said Horace Cornelius, who was a foreman for Gorrell, Barrow & Kirkpatrick, highway contractors, undertook to ride standing on the right running board of a Chevrolet Coupe owned and driven by L. D. Gorrell for a distance of about five or six miles over a detour or country road near Selma, Tennessee, which was extremely muddy and slippery caused from a heavy rain the night before.

"4. That at the time the said Cornelius placed himself on the running board of said automobile, the said car which contained only one seat, was occupied by five men and as the deceased was being conveyed in the manner aforesaid the automobile slipped from the road into a ditch on the right-hand side of the automobile and the deceased was caught between the body of the automobile and a bank on the right-hand side of the road and was so badly crushed and mangled that death resulted in about three hours.

"The plaintiff gave notice and filed proofs of loss and made claim for indemnity as required by the policy.

"5. That the action of the deceased in placing himself on the running board and undertaking to ride the distance of five or six miles in this position was a voluntary act on the part of the deceased and was done without any instructions from any of his employers."

If we give to the language of the contract its plain and natural meaning, and the interpretation which, in our opinion, the parties contemplated, the company is not liable for the injury to the insured while riding on the running board, which is wholly outside of and not "in" the automobile. This was a coupe, which is defined in Webster's New International Dictionary as "An automobile having an inclosed body of one compartment usually seating two to four persons, including the driver." This dictionary also contains a photograph of a coupe, from which it appears that no provision is made for one to ride on the running board. There is no place to sit and nothing for one to hold to, so that riding thereon is extremely hazardous. If the automobile hits a rough place in the road, skids, or rounds a curve, it would most likely precipitate one riding on the running board to the

ground and injure him. While we are accustomed to see daily hundreds of automobiles in motion, it is a rare thing to see a person riding on the running board of one of these vehicles; they are not constructed for that purpose. Young people at times, in a sportive manner, when an automobile is being driven slowly through the streets of a city in a parade or in celebration of some occasion do ride on the running boards and even on the fenders and bumpers of an automobile; but this practice is exceedingly dangerous and frequently results in injury.

In *Morris* v. *Peyton* (1927), 148 Va., 812, 821, the court said: "It is a matter of common knowledge and experience that it is hazardous to ride on the fender or running board of a moving vehicle, both because of the danger of being thrown off in the ordinary running of the car and because of the greater likelihood of being hurt in case of an accident."

In *Van Bokkelen* v. *Travelers' Ins. Co.*, 34 App. Div., 399, 54 N. Y. Supp., 307, affirmed without opinion in 167 N. Y., 590, 60 N. E., 1121, it was held that a passenger who is fatally injured by falling from the uninclosed platform of a railroad car was not killed while "riding as a passenger in any passenger conveyance," within the meaning of a policy stipulating for double indemnity in case of death while so riding, and single indemnity in other cases. The court said: "We have seen that the meaning of this clause is quite clear, and free from ambiguity. Are we justified in holding that it was intended to apply to a passenger outside of or upon a passenger conveyance, when the language used is that it was to apply only to a passenger in a passenger conveyance? There is nothing in the object sought to be attained by this contract of insurance to justify us in giving a broader mean-

ing to this clause. The policy insured against bodily injuries effected through external, violent, or accidental means, without regard to the position of the insured at the time the injuries were sustained; and it fixed a gross sum to be paid to the beneficiary where death resulted from such injuries. There was no limitation as to the place in which the insured was to be when such injuries were sustained, and the liability of the defendant under this clause of the policy is conceded, and has been discharged. But, in addition to the payment of the sum of money, under these circumstances the defendant was willing to double its liability in case the deceased should sustain injuries when in a particular place, surrounded by such safeguards that there would be less probability of injury. It is quite apparent that a passenger upon a railroad train is much less exposed to accident when in the car than when approaching the car, or when upon the platform, either entering or alighting from it. Many cases have commented upon the fact that a platform of a car in motion is not a safe place for a passenger to ride. Many things are liable to happen to a train in motion, exposing a passenger upon the platform to danger to which he would not be exposed if in the car. And this defendant had a right to limit its liability to pay double the amount to the beneficiary when death resulted from injuries in a case where, from the position of the insured, he would be comparatively safe, and the probability of his sustaining injuries under the circumstances quite remote. It would seem, therefore, giving this clause the meaning that the language used would indicate, and considering the object sought to be obtained, that the court would not be justified in extending this construction so as to apply this clause to a death resulting from the in-

juries specified, as stated in the agreed statement of facts."

In *Aetna Life Ins. Co. v. Vandecar,* 86 Fed., 282, 289-290, the Circuit Court of Appeals held that a provision for injuries received "while riding as a passenger in a passenger conveyance using steam" was not to be applicable to one riding on the platform of a railroad car. In the opinion it was said: "We think the words used in the contract clearly indicate the intention of the parties. They evidently meant to stipulate for the double indemnity while the insured was riding in an exceptionally safe place. One who rides as a passenger in a passenger conveyance using steam occupies such a place. But one who rides on, but not in, such a conveyance, whether on the platform, or on the top of the car, or on the machinery beneath it, occupies a very dangerous place, and the parties neither agreed by the terms of their contract, nor intended to agree, that this double indemnity should be paid to one who rode in such a position. The plain meaning of this provision is that, if the plaintiff is injured while traveling as a passenger in a place in a passenger conveyance (using the motive power mentioned in the contract) assigned for passengers,—in this case within the car,—the defendant will pay double the amounted mentioned in the policy. That the defendant had a right to so limit its liability there can be no doubt. *Bigelow* v. *Insurance Co.,* 93 U. S., 284; *Insurance Co.* v. *McConkey,* 127 U. S., 661, 8 Sup. Ct., 1360; *Insurance Co.* v. *Seaver,* 19 Wall., 531. The words 'in a passenger conveyance' were doubtless used advisedly, and for the express purpose of limiting the defendant's liability. The reason for so doing is at once apparent. The place specified in the contract—'in a passenger conveyance'—is

a place of little or no danger, and the risk assumed is slight, while on the platform of a conveyance using the motive power described in the contract, and especially, as in this case, on the platform of a railway car, is an exceedingly dangerous place when the train, to which the car is attached, is in motion. That riding upon the platforms of railway cars, when trains are in motion, is dangerous, is a matter well understood by the railway companies and people who are accustomed to traveling by rail, and, in order that passengers may be advised of the danger, in almost every passenger car in service upon the various railways of the country notices are posted in conspicuous places in the car warning passengers that it is dangerous to go upon the platforms of the cars while the train is in motion.

"The contract in this case provides for double compensation in certain cases, but, to entitle the policy holder to recover this double compensation, his case must come fairly within its terms. The fact that it is not unusual for passengers traveling by rail to go upon the platforms of cars before the train stops at a station, as did the plaintiff in this case, cannot change or extend the contract of the parties. If the plaintiff had remained in the car—the place assigned for passengers on the train by which he was traveling—until it arrived at the station, he could not have been injured. He chose, however, to occupy a more dangerous position on the platform of the car; a position which, giving effect to the contract according to the fair meaning of the words used, does not come within the provision of the policy now under consideration."

In *Nat. Life Co. of U. S.* v. *Fleming,* 127 Md., 179, 186, 96 Atl., 281, the court, denying liability where the plain-

tiff while standing on the platform of a surface car fell off the same while it was in motion and was fatally injured, said: "The language of the policy with which we are now concerned, while 'riding as a passenger in a place regularly provided for the transportation of passengers, within a surface, underground or elevated railroad car,' is too clear and free from ambiguity to admit of any doubt as to the intention of the parties, and should not therefore be construed to include risks clearly excluded by the terms of the contract."

In *Mitchell* v. *German Commercial Acc. Ins. Co.*, 179 Mo. App., 1, 161 S. W., 362, the assured was injured while attempting to get on a street car, and the court held that he was not injured while riding within the car, and said: "The language of the policy is entirely clear to the effect that insurance for accidental death is vouchsafed only in those cases where injuries received which result in death occur while riding as a passenger in a place regularly provided for the transportation of passengers by a common carrier. . . . The Courts are not authorized to seize upon certain and definite covenants expressed in plain English with violent hands and distort them so as to include a risk clearly excluded by the insurance contract."

We have been referred to no authority taking a contrary view to those expressed above. Counsel cite the case of *Preferred Accident Ins. Co. of New York* v. *Muir*, 126 Fed., 926, which is not in point. There the policy provided for indemnity to a passenger while riding *"in or on"* a public conveyance, which is much broader than the provision under consideration.

Riding upon the running board of an automobile is so unusual and so hazardous that we are satisfied the parties

never had in mind such a situation when contracting for indemnity while "actually riding in an automobile." The word "actually," which means according to Webster "in fact," adds strength to the idea that the party must be inside the automobile, the place provided for passengers, when injured in order to recover.

Counsel further insists that if the company had not intended the policy to cover one injured while riding on the running board they would have made an express exception to that effect. This contention is based upon an independent section of the contract, unrelated to the one here involved, which provides indemnity "While actually riding as a passenger and not being a railroad employe on duty, in a place regularly provided for the transportation of passengers within a surface or elevated railroad or subway car, steamboat or other public conveyance provided by a common carrier, for passenger service only, and while not being upon the step or steps, or getting on or off such conveyance." It is urged that the foregoing clause and the one in question should be construed together, and since exceptions are made in the one instance and not in the other, it should be held that the company did not intend to exclude one riding on the running board of an automobile. The two situations are not parallel. If this was a suit where indemnity was sought for an injury arising where the insured was entering or leaving a private automobile, there would be force in this position. But even then it is questionable whether the rule invoked would apply. The situations differ in many respects. One deals with passengers riding in public conveyances, such as elevated, surface and subway railroads, where passengers are constantly entering and leaving the cars by the hundreds, and where

many accidents occur. There the passenger has no control over or contact with the operator of the train. From an examination of the authorities we find that there is much conflict as to whether one entering or leaving such a public conveyance is a passenger "in a place regularly provided for the transportation of passengers;" and to meet this situation the exception above referred to was most likely inserted. The situation with respect to entering and leaving a private automobile is altogether different, because in so doing few if any accidents occur. But as previously stated, we are not dealing with a case of that character, and limit our decision to the facts of this case.

Concluding that the policies by their plain and unambiguous language do not provide indemnity for one injured while riding on the running board of an automobile, and that such was not contemplated by the parties, we must reverse the judgment of the trial court and dismiss the suit.