# MADDUX v. NATIONAL LIFE & ACCIDENT INS. CO.—254 S. W. (2d) 433.

Middle Section.　September 12, 1952.

Petition for Certiorari denied by Supreme Court, January 15, 1953.

Vincent Cason, Thomas E. Hinson, of Lebanon, for plaintiff in error.

A. A. Adams, Jr., of Lebanon, Walter M. Robinson, Jr., of Nashville, for defendant in error.

HICKERSON, J. Juanita B. Maddux, as beneficiary named therein, brought this suit against The National Life and Accident Insurance Company to recover upon a life insurance policy issued by defendant to her husband, Nathan G. Maddux. She alleged the policy was in force and her husband was dead.

The suit was defended on the ground that Nathan G. Maddux committed suicide.

The policy contains this provision:

"If the Insured, within two years from the date of issue of this policy, dies by his own hand or act, whether he is then sane or insane, the liability of the Company under this policy will be limited to the premiums actually received, with interest on them at the rate of five per cent per year."

The case was tried by judge and jury upon the one issue: Did the insured commit suicide?

The trial judge directed a verdict for defendant and dismissed plaintiff's suit.

In this court there is one question: Did the court err in directing a verdict for defendant?

There is a presumption against suicide, but this presumption does not require that all cases involving the question of suicide be submitted to the jury when all the proof shows that the insured did commit suicide. Mutual Benefit Health & Accident Association v. Denton, 22 Tenn. App. 495, 124 S. W. (2d) 278.

In Provident Life and Accident Insurance Company v. Prieto, 169 Tenn. 124, 83 S. W. (2d) 251, 267, the court said:

"From a consideration of the cases cited in the briefs of counsel, as well as of many others found by the court's independent investigation, it is believed, with reasonable confidence, that the decided weight of authority, federal and state, supports the following propositions:

"(1) In a suit on an accident policy where the plaintiff can recover only for an accidental death, the affirmative of the issue is on the plaintiff from the beginning to the end of the trial, and the burden of proof in its general sense is on the plaintiff to show an accidental death.

"(2) This burden is met, and a prima facie case made out, when the plaintiff has shown a death by external and violent means under circumstances not inconsistent with accident.

"(3) Where a death by external and violent means is shown, and there is no proof as to how it was caused, or the attendant circumstances leave the question doubtful, or the proof concerning them is conflicting or not inconsistent with accident, the law presumes an accidental death, and the burden of proof, in its secondary sense, is cast on the defendant, and requires it to prove by a fair preponderance of the evidence that death was caused by suicide.

"(4) This presumption is not displaced by proof of circumstances which merely tend in a greater or less degree to show suicide, but in such case it is a question for the jury whether they overturn the presumption.

"(5) Where there is no proof indicating either accident or suicide in case of a death by external violence, or where the proof is equally balanced, or

is conflicting, this presumption comes to the aid of the plaintiff, in making out his or her case.

"(6) Where death by external violence is shown by facts or circumstances inconsistent with accident, the presumption against suicide is displaced, and no longer continues to operate in favor of the plaintiff."

In Bryan v. Aetna Life Insurance Company, 25 Tenn. App. 496, 502, 160 S. W. (2d) 423, 427, this court held:

"We think the true rule is that where the reasonable probabilities from all the evidence, in the light of reason and common sense, all point to suicide, and are inconsistent with any other theory the court should not leave the issue of suicide to the jury, but should decide as a matter of law that the insured committed suicide. Hassencamp v. Mutual Ben[efit] Life Ins. Co., 4 Cir., 120 F. 475, 56 C. C. A. 625; Michalek v. Modern Brotherhood [of America], 179 Iowa 33, 161 N. W. 125; Green v. New York Life Ins. Co., 192 Iowa 32, 182 N. W. 808; Deweese v. Sovereign Camp, Woodmen of the World, 110 Kan. 434, 204 P. 523; Sovereign Camp, Woodmen of the World v. Hruby, 70 Neb. 5, 96 N. W. 998; Hardinger v. Modern Brotherhood [of America], 72 Neb. 860, 101 N. W. 983, 103 N. W. 74; Agen v. Metropolitan Life Ins. Co., 105 Wis. 217, 80 N. W. 1020, 76 Am. St. Rep. 905; Hart v. Fraternal Alliance, 108 Wis. 490, 84 N. W. 851."

There is evidence to support the following facts: On the night prior to his death insured was highly nervous and could not sleep. In the early part of the night a chiropractor gave him a treatment. About four o'clock in the morning a medical doctor came and gave him a narcotic and a sedative. He went to sleep and slept until

about six or six-thirty o'clock when he went to his place of business, returning home about seven-thirty o'clock. This was his usual custom.

Insured requested his wife to drive their son to the high school. This, also, was a usual custom. When she left home her husband was lying on the divan resting. He said he felt very well but was nervous. When his wife returned thirty minutes later, her husband was dead in their garage from a wound in the head caused by a shotgun.

Plaintiff contends insured's death was caused by accident. Defendant contends his death was caused by suicide. There is no direct evidence to support the theory of accident or suicide. Plaintiff and defendant must rely upon circumstantial evidence.

The following facts and circumstances tend to support the theory of accident:

(1) Insured had to go upstairs to get his gun after his wife left to take their son to school. He left this private secluded place upstairs in his home and came downstairs and went into a garage which was wide open, facing the street, and in plain view of the traveling public. This action seems inconsistent with suicide.

(2) Insured had an unexploded gun shell in his pocket when he was killed. No reason is suggested for his having the extra shell in his pocket if he intended to commit suicide.

(3) He was happy in his home life and had no business or financial troubles.

(4) He had been sick for some time, but was getting much better.

(5) He had never given any intimation of suicidal intent.

(6) He may have dropped the gun on the floor of the garage and it exploded. People will drop guns and they will explode when dropped.

(7) He was shot in the center of the forehead above the eyes. This seems to be a strange place for a man to put the muzzle of a shotgun to purposely kill himself.

(8) The shell might have hung in the gun and insured was trying to extricate it and accidentally discharged the gun and killed himself.

(9) The proof shows only one reason for his going to the garage with his gun: to shoot birds. He had done this theretofore. Other reasons, satisfactory to insured, not shown in the proof, might occur to the mind.

(10) There is a presumption against suicide because men want to live.

In the absence of any direct evidence which shows suicide, we think this case should have gone to the jury. We cannot know exactly what happened. Mr. Maddux may have intentionally taken his own life. Then, again, he may have been accidentally killed. We do not know. The jury must decide that question.

The assignment is sustained. The judgment is reversed. Tax the costs of the appeal against defendant. Remand for a new trial.

Felts and Howell, JJ., concur.