Mrs. Frances Kernodle, Appellee,

v.

Peerless Life Insurance Company, Appellant.

378 S. W. 2d 744

(*Jackson,* April Term, 1964.)

Opinion filed May 8, 1964.

EMMETT W. BRADEN, ELMORE HOLMES, III, Memphis, of counsel, ARMSTRONG, McCADDEN, ALLEN, BRADEN & GOODMAN, Memphis, for appellee.

THOMAS R. PRICE, Memphis, of counsel, CANADA, RUSSELL & TURNER, Memphis, for appellant.

MR. JUSTICE WHITE delivered the opinion of the Court.

The defendant insurance company, appellant here, assigns as error the action of the chancellor in finding in favor of the beneficiary under an insurance policy issued to her deceased husband.

Said husband had in force, at the time of his death, an insurance policy providing, in part, as follows:

"This policy insures, subject to all provisions and limitations herein contained,

\* \* \* \* \* \*

(b) Against loss resulting from any accidental bodily

injury sustained while this policy is in effect, hereinafter referred to as 'such injury';

\* \* \* \* \* \*

Part One  ACCIDENTAL DEATH BENEFIT FOR SPECIFIED ACCIDENTS $5,000.00

a. If the covered injuries are received while the insured is riding as a fare-paying passenger within the enclosed part of any railway passenger car or street railway car, or within the enclosed part of any bus operated on a regular schedule between designated stations and provided by a common carrier for passenger service and such injuries shall result in the death of the insured within sixty (60) days after the date of the accident, the Company will pay the designated beneficiary the sum of five thousand dollars ($5,000.00)."

There was a stipulation of the facts and upon consideration thereof the chancellor found in favor of the complainant as indicated above. We now summarize the facts by stating that the insured was sixty-one years of age at the time of his death. He had secured the life insurance policy in question on the 19th day of February, 1960, some twenty-six days prior to his death. He had paid an initial premium of one dollar, which would have carried the life insurance in force until four days after his death.

In the year prior to his death he had been discharged twice from the same job for being drunk. This employer described him as being an alcoholic. About two months before his death he obtained a job as a furniture salesman. About two weeks before his death he began drinking and began missing work. On the 9th of March, 1960,

six days prior to his death, he reported to work in a drunken condition. As a result of this his employer sent him home, but did not discharge him. However, this was the last the employer saw or heard of him.

His wife left home on the 12th of March, 1960, to attend a funeral in Mississippi. Before she left he told her that he was going to Texas to look for a job. She never saw him again.

On the night of the 14th day of March, 1960, he boarded a train in Memphis at 8:30 P.M. with his destination being San Antonio, Texas. He transferred to another train at Little Rock, Arkansas at approximately 12:40. Shortly after the train left Little Rock the insured secured a roomette in the pullman car just ahead of the day coach in which he was riding. He accompanied the conductor to the roomette and carried with him a small bag. The conductor then went to the rear of the train, some five cars back, on his customary rounds and started back toward the front of the train. As he passed the insured's roomette he noticed through its open door that the insured was not there. He also noticed that there was a pint of whiskey, one-third of which was gone, lying beside the small bag. The conductor went to the next car forward but when he was told that no one had passed that way he returned in search of Mr. Kernodle.

He again passed the empty roomette and went to the rear of the car where, upon entering the vestibule, he found the loading doors on the right side of the train open and flapping in the breeze. The doors had been checked and found closed by the conductor on his rounds only a few minutes before. After this discovery the conductor re-entered the pullman and looked in the pub-

lic lavatory. He found that it was empty but had been recently used.

The body of the insured was found beside the tracks where it had come to rest after leaving the train. The train had just passed the point where the body was found when the conductor discovered the doors open.

The loading doors which the conductor found open consisted of two steel sections. Each opens toward the inside of the car and each is secured by a lever which must be raised up and to the right before it can be opened. This operation requires considerable strength. The top section must be opened first and then the lower section. They are so constructed that they cannot come open accidentally or of their own accord.

Upon these stipulated facts and the exhibits (pictures of the doors), which were made a part of the stipulated facts, the chancellor made a decree in favor of Mrs. Kernodle, the complainant, for $5,000.00 as the designated beneficiary of the death benefits of the insurance policy in question. The chancellor found that the insured met his death as the immediate result of accidental injuries received while riding as a fare-paying passenger within the enclosed part of a railway passenger car within the meaning of the insurance policy, so as to be entitled to the maximum coverage afforded by the policy.

The chancellor further found that the defendant's failure and refusal to pay the benefits to complainant was in good faith and that the complainant was, therefore, not accordingly entitled to recover the penalty provided by T.C.A. sec. 56-1105.

The appellant contends that the chancellor erred in holding that the insured met his death as a result of an

accident, and that even if the insured met his death as a result of an accident such did not occur while the insured was riding within the *enclosed* portion of a railway car so as to justify the chancellor's award of double indemnity under the terms of the policy.

There was found on the person of the deceased a wrist watch, a gold wedding band, a diamond ring, and $322.30 in currency and change.

There was found in the roomette, or the coach car from which he had transferred a short time before his death, some personal effects including the policy of insurance in question which is basically a "sickness, hospital and accident policy", the policy insuring the deceased and his family (his wife), Mrs. Kernodle, for the initial premium of $1.00 and for renewal monthly premiums of $4.00. There was a number of other items including the original or copy of an income tax return for the year 1959 showing a substantial income and contributions to various charities, including the sum of $410.00 to his church.

There was also found a Bible which had been opened to Chapter 24 of the Book of Acts, which we have read and it refers to certain charges brought against the Apostle Paul and his defense to them. It is difficult to say that the reading of this portion of Paul's experience had anything to do with the subsequent events.

It is significant, however, in our mind that the deceased transferred from a coach car to a pullman car and purchased a roomette for a night's sleep. It is also significant that according to the stipulation of facts the windows in these cars are so fixed that they could not be raised or opened. Therefore, when these cars are coupled to-

gether the vestibules meet and all parts of the entire train become enclosed according to the agreed facts.

From our reading of the agreed facts we are compelled to affirm the action of the chancellor because in our opinion the facts do not preponderate against his conclusion.

Under T.C.A. sec. 27-304 the scope of review in this Court is governed by T.C.A. sec. 27-303 so that "the hearing of any issue of fact or of law in the appellate court shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the judgment or decree of the trial court, unless the preponderance of the evidence is otherwise."

There is a strong presumption in law against suicide based upon knowledge of man from time immemorial that all creatures within or upon the earth will fight for survival submitting only to death when the struggle appears useless and beyond hope of success.

While it is true that Mr. Kernodle had a personal problem with alcohol, still it is equally true that he determined to make a new life by going to another city for employment. He was not desperate spiritually or financially because, as shown by the proof, he had been reading the Bible for comfort and possibly inspiration, and he had on his person a wrist watch, a wedding band, a diamond ring, and a considerable amount of currency.

In view of the presumption against suicide, it is quite plausible in our minds to conclude that the insured, feeling the need for fresh air, went to the vestibule and opened the outside doors (the windows could not be opened), to satisfy his desire. After the outside doors

were opened he could have fallen from the railway car resulting in his death.

In reading the proof the chancellor was compelled to reach the conclusion that the deceased lost his life by accident or by a deliberate act. There being no positive proof either way, he chose to rule against suicide and in this we think he is amply supported by the proof in the case and by prior authority in this State.

In the case of *Provident Life & Accident Ins. Co. v. Prieto,* 169 Tenn. 124, 167-168, 83 S.W.2d 251 (1935), this Court set out the rules governing the nature and effect of the presumption against suicide after an exhaustive review of all the authorities. Since that time the rules set out in that case have been followed by the Court of Appeals and this Court. See *Bryan v. Aetna Life Ins. Co.,* 174 Tenn. 602, 130 S.W.2d 85 (1939), and *Maddux v. National Life & Accident Ins. Co.,* 36 Tenn. App. 275, 277-278, 254 S.W.2d 433 (1952).

In Prieto it was held that the *prima facie* case of accidental death is made out by proof of death by violent and external means under circumstances not inconsistent with accident.

Also, where a death by external and violent means is shown, and there is no proof as to how it is caused, or the attendant circumstances leave the question doubtful, or the proof concerning them is conflicting or not inconsistent with accident, the law presumes an accidental death, and the burden of proof, in its secondary sense, is cast on the defendant (insurance company in this case), to prove by a fair preponderance of the evidence that death was caused by suicide.

The case of Prieto is also authority for the statement that where there is no proof indicating either accident or suicide, in a case of death by external violence, or where the proof is equally balanced, or is conflicting, the presumption against suicide comes to the aid of complainant in making out a case of accidental death.

This deceased died by external and violent means without question and where there is no direct or positive proof as to the exact details of how the death occurred, the attendant circumstances when viewed in the manner that we are called upon to view them as an appellate court, are not inconsistent with accident.

We next consider the terms of the policy as to whether the death occurred from accidental bodily injuries received while riding as a "fare-paying passenger within the enclosed part of any railway passenger car."

There is no doubt that the deceased was a fare-paying passenger, first as a passenger in the coach part of the train and later as a passenger in a pullman car in which he had purchased a roomette for the night.

Therefore, we need only to consider now whether the accidental bodily injuries received by the deceased occurred within the enclosed part of any railway passenger car. While this insurance clause is plausibly subject to the interpretation placed upon it by the brief filed by counsel for the insurance company, it is also plausibly subject to the interpretation placed upon it by counsel for the appellee.

■ Of course, the policy required that the deceased had to have been traveling as a fare-paying passenger on the type of public transportation defined in the policy

as distinguished from one who pays no fare or who "catches" or "hobos" a free ride.

Next, the insured had to have been riding within the enclosed part of a railway passenger car as distinguished from riding on top or hanging on the side or riding underneath the railway passenger car as bums or hobos ordinarily ride.

The case of *New Amsterdam Cas. Co. v. Rust*, 164 Tenn. 22, 46 S.W.2d 70 (1932), and the other cases cited therein, are relied upon by the appellant, the insurance company, as a complete defense to the case at bar.

In the Rust case the policy provided indemnity against loss of life only if it was caused solely while the insured was "actually riding in a private automobile." The death of Rust resulted from bodily injuries suffered when he slipped from the running board of an automobile upon which he was standing at the time of his injuries and subsequent death. The Court said, at pages 29-30 of 164 Tenn., at page 72 of 46 S.W.2d:

"Riding upon the running board of an automobile is so unusual and so hazardous that we are satisfied the parties never had in mind such a situation when contracting for indemnity while 'actually riding in an automobile.' The word 'actually,' which means, according to Webster, 'in fact' adds strength to the idea that the party must be inside the automobile, the place provided for passengers, when injured, in order to recover."

The appellant contends that the Rust case has application here and further that the limitation contained in the policy in question is plain and clear. The statement

is made in the brief that if the insured fell or was thrown from the open vestibule door of the train that he did not receive an injury while riding as a passenger within the enclosed part of any railway passenger car. The same argument could be advanced, but we think to no avail, if the injuries producing death had been received by the insured by opening a window and extending a part of his body therefrom in order to get fresh air.

In the case of *Commercial Cas. Ins. Co. v. McCulley,* an Arkansas case, reported in 185 Ark. 468, 48 S.W.2d 225 (1932), the policy in question insured against accidental injury received "while actually riding as a passenger in a place regularly provided for the transportation of passengers only, within a railway car * * *." The insured in that case had temporarily stepped out onto an open platform. A sudden jerk of the train caused him to be thrown onto an adjoining highway, where he was struck by a passing automobile. The Court said:

"The plaintiff was a passenger riding in a car of an interurban railway provided for passenger service. He had paid his passage and, when the train stopped, walked out on the platform to observe the country. He was an able-bodied man and had a right to do this. It will be observed that he was on the platform of the car when he was thrown off by the car being started with a sudden jerk. This brought him within the terms of the policy. It did not make any difference that a part of his injuries were received by being struck by a passing automobile after he had been thrown from the platform of the car onto the adjacent highway. The proximate cause of his injury was being thrown from the platform of the car by the sudden starting

of it. (Citing *Aetna Casualty & Surety Co. v. Sengel,* 183 Ark. 151, 35 S.W.2d 67)." 48 S.W.2d at 226.

It is true that the external and violent injuries producing the death of Mr. Kernodle were not received while he was actually and physically within the enclosed portion of the railway passenger car. But the proximate cause of his death resulted from his riding as a fare-paying passenger within the enclosed part of a railway passenger car. Indulging in the presumption against self-destruction, Mr. Kernodle received his injuries as he fell from the enclosed portion of the passenger car or such injuries were received in such close proximity thereto as to be indistinguishable.

The vestibule was itself enclosed and made or formed a connection and, therefore, an integral part of the railway passenger cars and, in our opinion, the character was not changed when the exit doors were opened thereby providing a means or avenue for the death of the insured, which the chancellor believed proximately resulted from his riding as a fare-paying passenger within the enclosed part of a railway passenger car.

Under our scope of review of the action of the chancellor, accompanied by a presumption of the correctness of his judgment, we hold that the preponderance of the evidence is not against his finding in favor of the complainant, appellee.

Therefore, his action is in all things affirmed at the cost of the appellant.

BURNETT, CHIEF JUSTICE, and FELTS and DYER, JUSTICES, concur.

HOLMES, JUSTICE, not participating.