Nelle Rose HINES

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Civ. A. No. 4845.

United States District Court
E. D. Tennessee, N. D.

May 19, 1964.

Ben Simpson, Loudon, Tenn., S. F. Dye, Knoxville, Tenn., for plaintiff.

Wilbur W. Piper, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

Defendant, The Prudential Insurance Company of America, has filed a motion

in accordance with Rule 50(b) F.R. Civ.P. to set aside the verdict of the jury and for a judgment in its favor upon the ground that all of the evidence showed that the insured died as a result of suicide rather than accident.

Defendant has also moved for a new trial and urged in its support seven grounds. The first two grounds are directed to the insufficiency of the evidence to sustain the verdict of the jury. Grounds 3 and 4 assert that the Court erred in not sustaining defendant's motion for a directed verdict upon the ground that the evidence showed that death resulted from suicide rather than an accident. The 5th ground asserts that the Court erred in permitting the Witness Shular to state from the circumstances shown in the record that death could have been caused by accident. The 6th ground asserts that the Court erred in instructing the jury, before the evidence was completed, that plaintiff filed due proof of death in accordance with the terms and provisions of the policy and waited 60 days thereafter before instituting suit. The 7th and final ground asserts that the Court erred in allowing interest beginning 60 days after proof of death was furnished to defendant, which was July 29, 1963.

An oral hearing was held on the motion, at which time the attorneys for the respective parties made extensive arguments.

The sole question for the determination of the jury was whether the death resulted from suicide or from an accident. It was the theory of the plaintiff that death resulted from accident while it was the theory of the defendant that all of the proof showed that death resulted from suicide. There are facts in the record which support each of the theories. The facts which point to suicide are:

(1) The position of the pistol and of the deceased in the bedroom where he was found after the shot; also the fact that the bedclothes were in great disarray from all of which the inference could be made that the deceased sat on the edge of the bed, shot himself not fatally at the time and floundered around over the bed, finally coming to rest in a sitting position on the floor some six or eight feet from the pistol.

(2) There is no evidence that anyone else was around who could have murdered decedent.

(3) Powder burns were found on the deceased's right temple indicating that the pistol was fairly close to decedent's head at the time it went off. Evidence indicated that a pistol held against the head would leave no powder burns and that powder burns would be heavy to light from a discharge close to but not touching the head to a discharge as much as four feet away, beyond which they would probably become non-existent.

(4) The testimony of Mr. Carroll that the door to the closet where the pistol was kept was only about 10 inches ajar when he first entered the room. From this, defendant argues that deceased had taken the gun voluntarily from the shelf, pushed the door almost closed, and then voluntarily fired the fatal shot. Plaintiff argues that the gun might have discharged accidentally and that in floundering around on the floor deceased could have pushed the door to the position first found.

(5) Both Doctors Brown and Shay expressed the opinion that death resulted from suicide.

(6) Deceased had only that morning taken his wife to the hospital for treatment for anemia, she having been there once before for a long period for the same cause. From this, a jury might possibly draw the inference that decedent was depressed at facing a second siege of illness of his wife.

The facts which point to an accident are:

(1) Evidence that decedent was happily married with a beautiful young wife; that he had a deep affectionate feeling for his foster child and had only that day talked about constructing a doll house for her. In other words, motive for suicide is non-existent.

(2) No fingerprints were found on the gun, but when found on the floor the gun was still in two short paper candy bags from which the handle slightly protruded. There was a hole in the bottom of the candy bags where the bullet had emerged from the gun. The facts seem to indicate that the candy bags were too small for a person to get his hand inside sufficiently to pull the trigger. Through a plastic bag, attorney for defendant showed the trigger could be pulled. Pulling a trigger through two paper bags would seem to be difficult if not impossible. The absence of fingerprints has some significance since there is testimony that surfaces of the kind found on the gun are the easiest surface from which to obtain fingerprints.

(3) Plaintiff theorizes the gun was accidentally knocked from the high shelf in the closet, fell to the floor and discharged accidentally. There seems little doubt that a gun striking the floor could bounce four or five feet and if it discharged might bounce even further as a result of recoil.

(4) The opinions of the two doctors as to the course of the bullet after it entered the head were in conflict. An additional point, the testimony that the gun was an old model without a safety would be very dangerous to handle and inferentially would go off easily if dropped several feet.

(5) Counsel for plaintiff demonstrated that a person might stoop over rapidly enough in attempting to catch an accidentally dislodged gun to be close enough to the floor for powder burns if discharged when it struck the floor.

(6) The policy would have become incontestable for suicide about two weeks after decedent's death. Plaintiff argues that if this was a planned suicide, decedent would have waited until two weeks later when the defense of suicide, by the terms of the policy, would have ceased.

The evidence is not clear as to whether the door was entirely open or only about 10 inches ajar.

■ The trial judge has no power to direct a verdict where there is a dispute as to material evidence or reasonable doubt as to the conclusion to be drawn from the evidence. Provident Life & Accident Ins. Co. v. Prieto, 169 Tenn. 124, 136, 83 S.W.2d 251.

■ There is a presumption against suicide but this presumption controls decision only where there is no substantial proof to the contrary. The presumption is not of itself evidence. However, it will stand and be decisive until overruled by evidence which outweighs the presumption. It casts upon the defendant who claims that death resulted from suicide the burden of proving that death resulted from suicide. Ibid, 154, 155, 83 S.W.2d 251. See: Bryan v. Aetna Life Ins. Co., 174 Tenn. 602, 130 S.W.2d 85.

■ Where the reasonable probabilities from all the evidence tend to support the theory of suicide and are inconsistent with any other theory, there is no reasonable basis for a verdict by a jury of death from causes other than suicide and in such a situation the trial court should not leave the issue of suicide to the jury. Bryan v. Aetna Life Ins. Co., 25 Tenn.App. 496, 502, 160 S.W.2d 423. See: Mutual Benefit Health and Accident Ass'n v. Denton, 22 Tenn.App. 495, 505, 124 S.W.2d 278.

The most recent case that we have found in Tennessee dealing with the subject of suicide is that of Maddux v. Life and Accident Insurance Co., 36 Tenn. App. 275, 254 S.W.2d 433. In that case the Court of Appeals held that the trial court erred in taking the case away from the jury in the absence of direct evidence showing suicide.

In our case, there is no direct evidence of death by suicide or death by accident. As indicated at the outset, there are many circumstances in the record pointing to suicide while there are possibly as many or more circumstances pointing to accidental death.

■ The jury found that death resulted from accident. The trial court

is not permitted to substitute its judgment for that of the jury if there is an evidentiary basis to support the jury's verdict. Lavender v. Kurn, 327 U.S. 645, 652–653, 66 S.Ct. 740, 90 L.Ed. 916.

■ It is our opinion that there is an evidentiary basis in this case to support the verdict of the jury that the death resulted from an accident. Werthan Bag Corp. v. Agnew, 202 F.2d 119 (C.A.6).

Defendant's motion for a judgment notwithstanding the verdict of the jury must be denied.

■ In view of the holding on the motion for judgment notwithstanding the jury, it is only necessary to refer briefly to Ground No. 6 of the motion for a new trial in which it is asserted that the Court erred in withdrawing from the jury the defense that plaintiff could not recover because she had not submitted due proof of death to the defendant before bringing suit. The policy provides that proof of death of the insured shall be submitted to the company and for a waiting period of 60 days before the institution of suit. The Court held that there was no issue to submit to the jury on this question, as the undisputed proof showed that plaintiff notified defendant of the death of her husband; that she executed the documents furnished to her by defendant as proof of death; that the defendant took up the policy of insurance leading her to believe that payment would be made in accordance with the terms of the policy; that the defendant still retains the policy; that plaintiff waited more than 60 days after the policy was taken from her by the defendant and after she had signed what the company representative presented to her to sign as a proof of death; that she thereafter signed another proof of death; that the defendant conducted an investigation and denied liability.

In the opinion of the Court, this ground of the motion for a new trial is without merit and is overruled.

The Court has considered the remaining grounds of the motion for a new trial, some of which renewed the questions that the evidence was insufficient to sustain the verdict of the jury and that the Court erred in not directing the jury to return a verdict in favor of the defendant, and believing that all of the grounds in the motion for a new trial are without merit, it is, therefore, ordered that the motion for a new trial be, and same hereby is, denied.