**Nelle Rose HINES, Plaintiff-Appellee,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.**

**No. 16135.**

United States Court of Appeals
Sixth Circuit.

March 17, 1966.

Wilbur W. Piper, Knoxville, Tenn., for appellant.

Stuart F. Dye, Knoxville, Tenn., Ben B. Simpson, Loudon, Tenn., John B. Rayson, Knoxville, Tenn., on brief; Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, Tenn., of counsel, for appellee.

Before PHILLIPS, Circuit Judge, CECIL, Senior Circuit Judge and MACHROWICZ, District Judge.*

CECIL, Senior Circuit Judge.

This is an appeal by the Prudential Insurance Company, appellant herein, from a judgment in the United States District Court for the Eastern District of Tennessee, Northern Division. Nelle Rose Hines, appellee, brought the action in the District Court to recover the proceeds of an insurance policy, issued by the appellant, to George Burton Hines, deceased husband of the appellee. Jurisdiction of the court is based on diversity of citizenship. (Section 1332, Title 28, U.S.C.) The case is governed by the substantive law of Tennessee. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The case was tried to a jury and a verdict was returned in favor of the appellee for the full amount of the coverage of the policy, including double indemnity for accidental death. The parties will be referred to as the plaintiff or wife and the defendant. The deceased husband will be referred to as the insured or the husband.

The policy of insurance in question was issued by the defendant on August 9, 1961, for a face amount of $5,000. The policy provided for the payment of an additional $5,000. if death resulted directly and independently of all other causes from accidental bodily injury. There was a rider attached to the policy known as "Term Insurance-Decreasing Benefit." This rider increased the face of the policy at the time of the death of the insured by $9,740. There was a further provision in the policy that in the event of death by suicide the liability of the defendant was limited to a return of the amount of premiums paid by the insured.

The insured died on July 20, 1963, as a result of a gun shot wound. The circumstances of the wound were such as to give rise to a strong inference that death was caused by suicide. It was obvious that the death was caused either by an accident or by suicide. The defendant refused to pay and defended the law suit on the ground that death resulted from suicide. If the plaintiff had a right of recovery she was entitled to a judgment on all three features of the policy for a total amount of $19,740.

On the morning of July 19th, the day of the fatal injury, the insured left his home at about 7:15 A.M. to go to his work as a clerk in the Hines Grocery Store. About mid morning of Friday, July 19th, Dr. Walter Shea, Jr. directed the plaintiff to go to the hospital at Loudon about seven miles from the town of Lenoir City where the plaintiff and the insured lived. The plaintiff called the insured and he took her to the hospital. They arrived at the hospital about 1:30 P.M. The insured stayed with his wife for about one half hour and then left for home. It was the intention of the husband when he left the hospital, ac-

* Honorable Thaddeus M. Machrowicz, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

cording to the plaintiff's testimony, to change his clothes so that he would be dressed to go back to the hospital when he got off from work in the evening. The plaintiff had left her seven year old daughter with her neighbor, Mrs. James Carroll. The husband was to pick up the daughter when he went home and take her to the plaintiff's parents' home. Dr. Shea called the plaintiff about three o'clock in the afternoon and told her that her husband had been shot. He was taken to St. Mary's Hospital in Knoxville where he died about 4:30 A.M. Saturday morning, July 20th.

Mrs. Carroll saw the insured come home and shortly thereafter the plaintiff's daughter ran to Mrs. Carroll's house and told her something had happened to her father. Mrs. Carroll called her husband and he was the first one to enter the house. He found the insured sitting on the foot of the bed. He called out of the window and asked his wife to call Dr. Shea. Mr. Carroll tried to keep the insured quiet pending the arrival of Dr. Shea. Dr. Shea found the insured on the bed, "sort of twisted up in the bed clothes,"—with them wrapped around his legs and blood on the bed. The doctor found a bullet wound in the right temple and powder burns all around the wound within a half an inch of it. Dr. Shea arranged for the insured to be sent to the hospital and for Dr. Fred Brown to attend him.

Sheriff Ernest Guider found a pistol at or under the head of the bed. It was in two paper sacks. Most of the handles of the pistol were exposed and there was a hole in the bottom of the bag caused by the firing of the bullet. The sheriff picked up the pistol by the bag and it was checked for finger prints. None were found.

The plaintiff testified that the pistol had been in the sacks and on the shelf of her husband's closet for more than a year without being moved. Her husband kept two pairs of shoes on the shelf and the pistol was by the side of the shoes. There was no known motive, developed by the evidence, for the insured to take his own life. In fact it appeared from the evidence that the insured had every reason to want to live. He seemed to be well adjusted in his marriage and it appeared that he was in love with his wife and her seven year old daughter whom he had adopted. He had no financial problems. He was not known to be despondent but was rather of a happy and jovial disposition.

Upon these basic facts and the more detailed circumstances surrounding them, as shown by the evidence, the jury was required to draw its inferences and conclusion as to whether the insured met his death by accident or suicide.

We are met at the threshold of our discussion on this appeal with a question of the sufficiency of the evidence to support a verdict for the plaintiff. Should the trial judge have granted a directed verdict for the defendant at the close of all of the evidence in the case or should he have sustained the defendant's motion for judgment notwithstanding the verdict for the reason that there was no evidence of accidental death and all of the evidence pointed to death by suicide?

Specifically, it is plaintiff's theory, as stated in appellee's brief, "that the decedent accidentally knocked the pistol from the closet shelf and that while it was falling, the decedent attempted to catch it, with the result that the pistol discharged into the side of his head." As we have said the defendant claimed that the insured died as a result of a self-inflicted wound.

The principles of the law of Tennessee relative to these conflicting claims was properly stated by the trial judge in his instructions to the jury as follows.

"First, in a suit on an accident policy where the plaintiff can recover only for accidental death, the affirmative of the issue is on the plaintiff from the beginning to the end of the trial and the burden of proof in its general sense is on the plaintiff to show an accidental death. That simply means that the burden is upon Mrs. Hines to show an accidental death before she can

recover under the accidental provision of the policy.

"Second, this burden is met and a prima facie case made out when the plaintiff has shown a death by external and violent means under circumstances not inconsistent with accident.

"Third, where a death by external and violent means is shown, and there is no proof as to how it was caused, or the attendant circumstances leave the question doubtful, or the proof concerning them is conflicting or not inconsistent with accident, the law presumes an accidental death, and the burden of proof, in its secondary sense, is cast on the defendant, and requires it to prove by a fair preponderance of the evidence that death was caused by suicide.

"Fourth, this presumption is not displaced by proof of circumstances which merely tend in a greater or lesser degree to show suicide. But in such case it is a question for the jury whether they overturn the presumption.

"Fifth, where there is no proof indicating either accident or suicide in case of a death by external violence, or where the proof is equally balanced, or is conflicting this presumption comes to the aid of the plaintiff, in making out his or her case.

"Sixth, where death by external violence is shown by facts or circumstances, inconsistent with accident, the presumption against suicide is displaced, and no longer continues to operate in favor of plaintiff."

See Provident Life & Acc. Ins. Co. v. Prieto, 169 Tenn. 124, 83 S.W.2d 251; Mut. Ben. H. & A. Ass'n v. Denton, 22 Tenn.App. 495, 502, 124 S.W.2d 278; Maddux v. Nat. Life & Acc. Ins. Co., 36 Tenn.App. 275, 277, 254 S.W.2d 433.

■ Viewing all of the evidence in the light most favorable to the plaintiff we conclude that, under the instructions given, the jury could reasonably have drawn an inference supporting the plaintiff's claim of accidental death. See Bryan v. Aetna Life Ins. Co., 174 Tenn. 602, 130 S.W.2d 85.

In Bryan v. Aetna Life Ins. Co., 25 Tenn.App. 496, 502, 160 S.W.2d 423, 427 the court said,

"We think the true rule is that where the reasonable probabilities from all the evidence, in the light of reason and common sense, all point to suicide, and are inconsistent with any other theory, the court should not leave the issue of suicide to the jury, but should decide as a matter of law that the insured committed suicide."

In our own Court, Judge Simons, speaking for the Court in Connecticut Mut. Life Ins. Co. v. Lanahan, 112 F.2d 375, 376, stated the rule as follows:

"While courts are reluctant to withdraw from the jury an issue as to the cause of death where suicide is the defense, in view of the presumption that love of life is natural and the impulse to self-destruction rare, *and will refuse to do so where the facts and circumstances permit a reasonable inference to be drawn that death was the result of some other cause*, yet where they exclude inferences other than that the deceased intentionally destroyed himself, it becomes the duty of the court to direct a verdict for the defendant." (Emphasis added)

The insured died as a result of violent means under such circumstances that were not wholly inconsistent with the theory of accident and we cannot say that all probabilities pointed to suicide. Nor can we say that the circumstances of the insured's death excluded all inferences other than that he intentionally took his own life.

The trial judge did not err in denying the motions for a directed verdict and in refusing to sustain a motion for judgment notwithstanding the verdict.

■ Another assignment of error relates to the testimony of Clyde Shuler, a police officer of the Knoxville Police Department, who was called by the plaintiff as an expert witness on guns. It is

claimed that the witness went beyond the limits of proper testimony for an expert witness and that he invaded the province of the jury by testifying to the ultimate conclusion. Since no objection was made to the testimony in question we find it unnecessary to determine whether error was committed in admitting it. Rule 47, Federal Rules Civil Procedure.

 There is no merit to the defendant's claim that the action was brought prematurely. The trial judge committed no error in holding as a matter of law that the action was brought within the terms of the policy. The trial judge having determined that proof of death was submitted on July 29, 1963, it was proper to allow interest sixty days after that date.

The judgment of the District Court is affirmed.